## Black *v.* Woods, Appellant.

*Will—Construction—Survivorship.*

Testator devised certain real estate in trust for a son "and after his death to convey the same in fee simple to his issue, and, in case of his death without issue, then to convey the same to my surviving children share and share alike." The cestui que trust died intestate, unmarried and without issue after the death of the testator. *Held,* that the words "to convey the same to my surviving children" referred to survivorship at the death of the testator.

Argued Nov. 3, 1905. Appeals, No. 122, Oct. T., 1905, by George A. Woods and No. 123, Oct. T., 1905, by Harry Hays Woods, from decree of C. P. No. 1, Allegheny Co., June T., 1903, No. 103, decreeing specific performance in case of David P. Black v. Harry Hays Woods and George A. Woods, defendants, and Frank M. Woods et al., intervening defendants. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for specific performance of contract for sale of real estate. The court decreed specific performance.

The material facts are stated in the following opinion of the court below:

The question involved in this case is, whether under the will of the testator, William Woods, the real estate devised by the seventh paragraph and modified by the two codicils, is owned by the two defendants, Harry Hays Woods and George A. Woods, or whether Frank M. Woods and William A. Woods and the widow of Allen B. Woods, Jr., are entitled to a one-third share of said real estate. In other words, whether the words in the will, "then to convey the same to my surviving children share and share alike," refer to survivorship at the death of the testator, or to a survivorship at the death of the life tenant, William J. Woods.

The general rule in Pennsylvania is and always has been that the words "survivor" or "surviving" following a prior gift are understood as referring to the death of the testator, unless an intent of the testator to refer them to some other time is plainly and manifestly shown, and this has become a rule of property: Mining v. Batdorff, 5 Pa. 503; Johnson v. Morton, 10 Pa. 245; Ross v. Drake, 37 Pa. 373.

In Woelpper's Appeal, 126 Pa. 562, the court states the general rule as follows: " That the phrase, ' surviving brothers and sisters' means ' surviving at the death of the testator,' and that it shall be so construed unless it clearly appears that the testator meant it to refer to a different period."

And in Shallcross's Estate, 200 Pa. 122, opinion by Mr. Justice POTTER, it is said: " The rule is well settled in Pennsylvania that the period of survivorship is to be taken as the death of the testator, unless a contrary intent is apparent."

Again, as to the direction to convey. The question of testator's intention as to who is to take the ultimate bequest in case of the lapse is not affected by the fact that direction to convey was expressed in a trust. The question is one of substance and not one of form. In Snyder's Estate, 180 Pa. 70, testator gave the residue of his estate to his executors in trust, at the death of his wife to pay the income to his four children, in equal shares for their lives, and provided as to the principal

as follows : ".And upon the death of my above named children and as the same shall occur then in trust to pay over, grant and convey unto the respective children of my above named sons and daughters the principal or share of my estate, the income of which is devised for the benefit of their respective parents for life, etc." In speaking of the effect of the trust, the court says on page 72 : " The question here is not affected by the direction for conveyance at the expiration of the life estate. In England this would simply continue the legal estate in the trustees until the conveyance was made ; here, where equity is part of the common law, it has not even this effect, and the legal estate vests at once in the beneficiary : Renziehausen v. Keyser, 48 Pa. 351 ; Bacon's Appeal, 57 Pa. 504."

Not only, in our opinion, is there nothing in the will and codicils indicating that the testator refers to a survivorship at the death of the life tenant, W. J. Woods, but, on the contrary, we think that the will indicates that he intended the survivorship to take effect from the date of his death. The meaning is to be determined at the time he wrote his will, and the words are to be read with his expressed legal intention. In the earlier parts of the will the testator has named his children as " my son, George A. Woods," again, " my son, Harry Hays Woods," and again, " my son, Allen Boyd Woods ; " these three sons and William J. Woods, the life tenant named in the seventh paragraph, were all the testator's children, and when he named William J. in the seventh paragraph and made provision for him and his issue and in the same paragraph made provision for giving the property to his other children, " my surviving children," in case the gift to William J. should lapse, he evidently had in mind that all of his children should take an equal share whenever the lapse should occur, whether before his death or afterwards, and the words, " my surviving children share and share alike," referred to the children whom he had enumerated, namely, George A., Harry Hays and Allen Boyd. The authorities cited by the able and learned counsel for George A. and Harry Hays Woods, do not change the general rule, but are in harmony with it.

Our conclusions of law are :

1. That the words in the seventh paragraph of the will of William Woods, viz.: " then to convey the same to my surviv-

ing children share and share alike," refer to and take effect from the date of the death of the testator, William Woods, and not from the death of William J. Woods, the life tenant.

2. That the interest of Henry Hays Woods, in the real estate in controversy, is the one-third part in fee simple. The interest of George A. Woods is one-third part of the same in fee simple, and that the interest of Frank M. Woods, William J. Woods and Rose Woods, together as sole heirs at law of Allen B. Woods, is one-third part thereof in fee simple, and that on executing a general warranty deed to the plaintiff they are entitled to one-third of the purchase money for said real estate, to wit: the one-third of the sum of $40,000, and that each of these interests pay one-third the costs.

*Error assigned* was the decree of the court.

*W. B. Rodgers,* for appellants, cited: Steinmetz's Est., 194 Pa. 611; Woelpper's App., 126 Pa. 562; Reiff's Est., 124 Pa. 145; Peirce v. Hubbard, 152 Pa. 18; McKee's Est., 198 Pa. 255; Craige's App., 126 Pa. 223; Adams's Est., 208 Pa. 500; Theobald on Wills, 508, 511, 512.

*J. L. Ritchey,* with him *David S. McCann,* for appellees, cited: Mull v. Mull, 81 Pa. 393; Lapsley v. Lapsley, 9 Pa. 130; Passmore's App., 23 Pa. 381; Buzby's App., 61 Pa. 111; Hopkins v. Jones, 2 Pa. 69; Crawford's Est., 17 Pa. Superior Ct. 170; Cresson's App., 76 Pa. 19; Reinoehl v. Shirk, 119 Pa. 108.

PER CURIAM, January 2, 1906: .
Decree affirmed on the opinion of the court below.