(No. 30571.—■■■■■■■■■■■■)

NELLE PEADRO et al., Appellants, vs. IRTYS A. PEADRO et al., Appellees.

Opinion filed May 20, 1948—Rehearing denied September 15, 1948.

J. L. McLAUGHLIN, and JAMES M. McLAUGHLIN, both of Sullivan, for appellants.

ROBERT F. WHITE, and WILLIAM C. INGRAM, both of Sullivan, for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Appellants, Nelle Peadro, Helen Peadro Jones, Alice Wesson and Walter F. Wesson, Jr., by his next friend, Alice Wesson, filed a complaint for partition of certain lands in Moultrie County, and in aid of their complaint prayed for the construction of the fifth clause of the will of F. M. Harbaugh, deceased. The decree appealed from dismissed their amended complaint, as amended, for want of equity.

F. M. Harbaugh died July 17, 1933. Besides leaving considerable personal property, and a residence property which went to his wife, he left over 200 acres of farm land situated in Moultrie County. He left a will giving to his wife, Ella Harbaugh, a life estate in all the realty, and left the remainder to four nephews and nieces, namely, Earl D. Peadro, Berniece F. Peadro, Roy F. Peadro and Irtys A. Peadro, who were the children of a deceased sister of the testator and his only near relatives. May 8, 1935, Earl D. Peadro died intestate, leaving surviving his wife, Nelle Peadro, and his daughter, Helen Peadro (Jones) as his only heirs. December 25, 1939, Berniece F. Peadro (Wesson) died intestate, leaving surviving her

husband, Walter F. Wesson and her son, Walter F. Wesson, Jr., as her only heirs. Her husband then married Alice Wesson and on or about June 1, 1947, he died testate, leaving surviving as his only heirs and devisees, his wife, Alice Wesson and his son, Walter F. Wesson, Jr. On October 29, 1946, the life tenant, Ella Harbaugh, died. Since her death, Irtys A. Peadro and Roy F. Peadro have claimed sole and absolute title to, and possession of, the said estate devised by the will of F. M. Harbaugh, to the exclusion of the appellants in this suit who are the heirs and devisees of Berniece F. Peadro (Wesson), deceased, and Earl D. Peadro, deceased, their deaths having occurred prior to the death of the life tenant.

The fourth and fifth clauses of the will are as follows:

"Fourth: I hereby give and bequeath to Ella Harbaugh for and during her natural life, all other real estate of which I may die seized.

"Fifth: After the death of said Ella Harbaugh it is my will and request that all the real estate devised to Ella Harbaugh for life shall be equally divided, share and share alike, between Earl D. Peadro, Berniece F. Peadro, Roy F. Peadro and Irtys A. Peadro, or the survivor of them to be their sole and absolute property."

The sole question presented here is the character of the estates in remainder created by the fifth clause of the will.

It is appellants' contention that the words of survivorship contained in that clause refer to the time when the will took effect upon the death of the testator, and that each of the four remaindermen at that time became indefeasibly seized in fee simple of a vested estate in remainder.

It is appellees' contention that these words of survivorship refer to the time when the remainders were to come into possession at the death of the life tenant, and that the fifth clause of the will either created contingent remainders in the four remaindermen, conditioned as to each of them upon his or her surviving the life tenant, or created vested remainders, each of which was subject to be divested by

the death of the remainderman prior to the death of the life tenant.

Appellees rely upon certain cases where this court has made the following statement: "Where a gift to survivors is preceded by a life estate or other prior interests it takes effect in favor of those who survive the period of distribution and those only unless a special contrary intent is found in the will." And they argue that it is obvious from the language of the Harbaugh will, that no language in the will can be pointed to, and none is conceived of, which would be more definite evidence of the testator's intention to limit his devise to the beneficiaries named in the fifth clause of the will who survived the life tenant, and those only.

It is further contended by appellees that to give effect to the rules of construction, which appellants seek to apply, would strike out of the will and totally disregard the words "or the survivor of them" and the words "after the death of the said Ella Harbaugh."

We are unable to agree with appellees' position in this respect, for the reason that in the late case of *Murphy* v. *Westhoff,* 386 Ill. 136, this court held that where there is a gift simpliciter in remainder to several persons or to the survivor of them, the remainder vests immediately upon the death of the testator and is not contingent upon all or either of the remaindermen surviving the life tenant, and that the share of a remainderman dying after the testator but before the life tenant descends to the heirs-at-law of such deceased remainderman. In the *Westhoff case,* naming the children as taking "in fee" was held to be a strong circumstance indicating title vesting in the children. Here, the words "to be their sole and absolute property" has a like effect. We are of the opinion that this case controls in the instant case.

Appellees cite a number of cases where the language in the wills is not at all similar to the language in the Har-

baugh will. In the case of *Geiger* v. *Geer*, 395 Ill. 367, the testator left surviving as his only heirs-at-law a widow and three children, all of whom were living at the execution of his will. His will provided that certain described portions of his real estate be turned over to trustees to lease and pay over to each of his children, during his or her lifetime, the income from a certain portion, respectively, free from the claims of creditors, etc., and that on the death of any child the trust estate in the real estate of which he was given the income should cease and the title to the said real estate should "descend in remainder in accordance with the laws of descent then in force in this State." It was held the remainders in each case were contingent until the death of the life tenant, and that upon the death of each child his life estate was extinguished and the title descended to the heirs of such child, and that since such heirs could not be determined until the death of the child, the remainders were necessarily contingent.

In another of the cited cases, *Johnston* v. *Herrin*, 383 Ill. 598, the will gave the property, both real and personal, to the widow for life, to use, control, sell, deliver, convey and dispose of as she may desire, etc., and then directed that at the death of his wife, the executor was to convert all his remaining estate into cash and the same was to be equally divided "among my surviving descendants in the same shares and proportions as they would be entitled to by the laws of descent of the State of Illinois in the event of my death intestate;" and it was held that the estates were contingent until the death of the widow, the court holding that if the testator had intended the remainder to vest in his children at his death, he would not have used the word "surviving descendants."

The dissimilarity in the two cases above cited with the instant case is readily apparent, and to analyze all of the cases cited would unnecessarily extend this opinion. While it is true that in some of the cases relied on by appellees

there is language tending to establish the conclusion that the words of survivorship in the Harbaugh will refer to the death of the life tenant, such cases, in our opinion, are not sufficient to justify such holding in this case, in view of the holding in *Murphy* v. *Westhoff*, 386 Ill. 136. It is a well-established principle that the law favors the vesting of estates. Remainders will not be held contingent unless the intention to create such interest clearly appears from the words of the will or other instrument. (*Pereboom* v. *Cloyd*, 317 Ill. 85.) The law favors a construction which vests an absolute estate rather than a contingent or defeasible one. (33 Am. Jur. 545, sec. 88; 69 Corpus Juris 602, sec. 1682.) The reason for thus favoring vested rather than contingent estates and indefeasible rather than defeasible ones is to prevent the exclusion of property from the natural laws of descent and to permit and promote the unrestricted alienation of property, and not leave it tied up or uncertain for long periods, awaiting the happening of some contingency in the future. *Smith* v. *Chester*, 272 Ill. 428.

But, as it is undoubtedly the right of a testator, within legal limitations, to fix the time of vesting of any estate created by him, or to provide for the divesting of any estate which he has created, the question whether or not in a given case any interest or estate created by him is vested or contingent, or defeasible or indefeasible, depends, in final analysis, upon the intention of the testator as gathered from his will. In ascertaining the intention of the testator in any particular provision, consideration is to be given to the will as a whole and to all its parts in relation to each other, and not alone to any particular sentence or words separated from the rest. *Conde* v. *Trout*, 379 Ill. 89; *Defrees* v. *Brydon*, 275 Ill. 530.

The clauses other than the fifth clause of the will now under consideration throw no light upon the time to which the words of survivorship in the fifth clause refer. There

is no extrinsic evidence nor proof of any surrounding circumstances to aid us in the interpretation of this language. The fifth clause must speak for itself and, to ascertain the intent of the testator, we can only look to the language employed therein.

It is a general rule that where the devisees compose a class and there are no words of devise except a simple direction to divide the property at a specified time, the gift will not vest until the time of division. (*Carter* v. *Carter,* 234 Ill. 507; *Dee* v. *Dee,* 212 Ill. 338.) This principle, though often spoken of as a rule in regard to the vesting of gifts of personal property, is equally applicable to devises of real estate. (*Carter* v. *Carter,* 234 Ill. 507; *Dee* v. *Dee,* 212 Ill. 338; *Knight* v. *Pottgieser,* 176 Ill. 368.) There is an exception, however, so well established and universally recognized as to practically constitute another general rule, which is, although a devise arises wholly out of directions to divide in the future, yet if the division is not deferred for reasons personal to the devisee but merely because the testator desired to appropriate the subject matter of the devise to the use and benefit of another during the life of the latter, the vesting of the devise in remainder will not be postponed but it will vest at once, and the right of enjoyment only will be deferred. (*Ashmore* v. *Newman,* 350 Ill. 64; *Fay* v. *Fay,* 336 Ill. 299; *Carter* v. *Carter,* 234 Ill. 507; *Knight* v. *Pottgieser,* 176 Ill. 368.) The remainders in the instant case come squarely within this exception or last-mentioned rule. The testator postponed the right of the remaindermen to possession solely because he desired his widow to possess and enjoy the property and have the use and benefit thereof as long as she should live. Another reason for not applying here the rule in regard to the future vesting of estates when the gift thereof is contained only in a direction to divide in the future is the fact that four remaindermen are mentioned in the will by name and not as members of a class.

This court recognizes the rule that a gift to persons named is a gift to them individually and not as a class, and will treat the gift as one to individuals, unless reasons are found in the language and structure of the will for deciding that the intent of the testator, which is, of course, paramount to the rule, would be best subserved by disregarding the rule and treating the gift as one to a class. *Strauss* v. *Strauss*, 363 Ill. 442.

This case has presented much difficulty of solution by reason of the many interpretations given to the language in wills referred to in the briefs and the language used in the decisions in arriving at a conclusion. We are of the opinion, however, that the language used in these decisions must be read in connection with the facts involved in the particular cases. We have frequently held that a judicial opinion, like a judgment, must be read as applicable only to the facts involved, and is authority only for what is actually decided. (*In re Estate of Tilliski*, 390 Ill. 273; *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506.) Some of the cases appellees cite were decided upon the particular phraseology and context of the will. Some of the wills considered contained unambiguous expressions legitimately indicating the testator's intention that the words of survivorship used by him referred to the time of distribution or division, such as a direction that "after the decease of my wife all my real estate be equally divided among my then surviving children," or a devise of the property to "all the brothers and sisters I may leave living at the death of my wife." In some of the cases this court, from other provisions in the will and other factors in the case, spelled out a testamentary intention that the remainders be contingent until the time of distribution, or, if not contingent, that they be until that time subject to be defeated by the death of the remainderman prior thereto. On materially dissimilar facts, we do not reach that conclusion in the construction of the will in the instant case,

490

and, in harmony with the case of *Murphy* v. *Westhoff*, 386 Ill. 136, above referred to and explained, the decree of the circuit court of Moultrie County is reversed, and the cause is remanded to that court, with directions to proceed in a manner consistent with the views herein expressed.

*Reversed and remanded, with directions.*