Horvath Estate.

Submitted May 25, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Elmer T. Bolla,* for appellant.

*Elmer E. Harter,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 20, 1972:

John Horvath (testator) died January 8, 1959, survived by his widow and two daughters, Mary Achter (appellant) and Julia Holmes. Under his will—dated August 31, 1956—testator set up a trust under which testator's widow was to receive the net income during her lifetime[1] and "then upon the death of [his] said wife, if she shall survive [him]," testator directed:

---

[1] The trustee was directed to maintain testator's residence from the income of the estate and to permit testator's widow and daughter, Julia (then unmarried) "to live therein free of any charge or rent as long as [testator's widow] shall live." This residence property is known as 2328 State Street, Harrisburg.

"I give and devise to my daughter, MARY HORVATH ACHTER, my property No. 1622 North Second Street, Harrisburg, Pa., provided that within six months after my death or my said wife's death, whichever shall last happen, she pays to my daughter JULIA HORVATH, the sum of One Thousand ($1,000) Dollars in cash,

"I give and devise to my daughter, JULIA HORVATH, my residence property No. 2328 State Street, Harrisburg, Pa.

. . .

"All the rest of my estate or trust estate aforesaid I give and bequeath to my said daughters in equal shares."

Julia predeceased her mother, the life tenant, and was survived by her husband. The life tenant died April 29, 1969. Upon the life tenant's death, the trustee filed its final account. Appellant filed exceptions to the distribution proposed in the account which were subsequently dismissed and a final decree entered by the Orphans' Court Division of the Court of Common Pleas of Dauphin County. The instant appeal was then taken.

Appellant's first contention is that the interest given by testator to Julia was not vested but contingent upon her survival of testator's widow, the life tenant, and, therefore, since Julia predeceased the life tenant, her interest did not vest. The primary consideration in the construction and interpretation of wills is that testator's intent, if ascertainable, should prevail. *E. g., Pearson Estate*, 442 Pa. 172, 180, 275 A. 2d 336, 339 (1971) ; *McKinney Estate*, 435 Pa. 608, 612, 258 A. 2d 632, 634 (1969) ; *Carter Estate*, 435 Pa. 492, 496-7, 257 A. 2d 843, 845 (1969). This intention is to be garnered, if at all, from an examination of the testamentary language and scheme of the will. *E.g., Woodward Estate*, 407 Pa. 638, 182 A. 2d 732 (1962). "If the language

employed by the testator in disposing of his estate is plain and clearly discloses his intention, the will interprets itself and no rules of construction are necessary to aid in its interpretation." *England Estate,* 414 Pa. 115, 200 A. 2d 897 (1964). *See, also, Lewis Estate,* 407 Pa. 518, 180 A. 2d 919 (1962); *Buzby Estate,* 386 Pa. 1, 123 A. 2d 723 (1956).

When the language in a will is ambiguous, we resort to canons of construction. *See, Newlin Estate,* 367 Pa. 527, 80 A. 2d 819 (1951); *Wood Estate,* 321 Pa. 497, 184 Atl. 13 (1936); *Weir Estate,* 307 Pa. 461, 161 Atl. 730 (1932); *Mulliken v. Earnshaw,* 209 Pa. 226, 58 Atl. 286 (1904). Moreover, we have also articulated a presumption in favor of the vesting of interests when dealing with ambiguous language. *E.g., Newlin Estate,* supra; *Neel Estate,* 252 Pa. 394, 97 Atl. 502 (1916); *Tatham Estate,* 250 Pa. 269, 95 Atl. 520 (1915).

From our examination of the language of this will, testator's intent seems clear and we need not resort to any canon of construction or presumption in order to determine whether Julia's interest is vested or contingent. Testator mentioned three objects of his bounty, his wife and two daughters. His will clearly spells out his intent to provide a place of residence, maintenance and charge free, for his wife during her lifetime and a distribution to her of *all* the net income which his estate produced and a distribution, upon her death, as directed in the will of the balance of the estate to his two daughters. In so providing, testator attempted to equalize what each daughter would receive.

A century ago, this Court, in *McClure's Appeal,* 72 Pa. 414 (1872), was faced with a fairly similar factual situation. In *McClure,* testator gave the "whole" of his realty to his widow for life or widowhood and one-half of his real estate for her life if she remarried;

provision was then made for a sale of the realty, on the wife's death, and a division of the proceeds among certain named nephews and nieces equally; one niece married and predeceased the life tenant. In awarding her legacy to her husband, this Court held the deceased niece's interest was vested and not contingent, the interest vesting immediately on testator's death and only the time of enjoyment of that interest being postponed. *See also, Chew's Appeal,* 37 Pa. 23 (1861).

In the case at bar, Julia had a vested interest which passed to her husband.

Appellant next contends that the word "then" appearing in another clause of the will—"and then upon the death of my wife,"—clearly expresses the time for determination of the distributees, thereby defeating the devise or bequest to Julia Holmes. We stated in *Vandergrift Estate,* 406 Pa. 14, 33, 177 A. 2d 432, 441 (1962) : "The word 'then' is used in this will as a conjunction meaning 'in that event', not as an adverb meaning 'at that time'." It is our opinion from a reading of the entire will that the expression employed by the testator, "and then upon the death of my wife," is used in the sense of "in that event" rather than signifying the time when the remainder interest of his daughters would vest.

Lastly, appellant urges that the result of the decree below is to award distribution of Julia's share to her husband, who was not of testator's blood line. Within the four corners of this will there is nothing whatsoever indicating an intent on testator's part to restrict his bounty to those of his own blood and to exclude persons not of the blood. Indeed, had such been testator's intent he had ample time to revise his will to exclude possible inheritance by Julia's husband. While Julia was unmarried when the will was executed, she did marry within six months and testator had two

years thereafter in which, had he so desired, he could have excluded Julia's husband. This argument lacks merit.

Since we conclude that Julia's interest was vested, not contingent, we need not consider whether the property devised to Julia passed through the residuary clause of the will to appellant. The contingency which called for a "gift over" never occurred.

Decree affirmed. Appellant to pay costs.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the decision of this case.