514 A.2d 587

ESTATE OF Bennie B. ROZANSKI, a/k/a Benjamin Rozanski, a/k/a Ben Rozanski, Deceased.

Appeal of ESTATE OF Bennie B. ROZANSKI, a/k/a Benjamin Rozanski, a/k/a Ben Rozanski, By and Through Its Administratrix, Lottie M. ROZANSKI.

Superior Court of Pennsylvania.

Argued May 14, 1986.

Filed Aug. 25, 1986.

Joseph Falchek, Wilkes-Barre, for appellant.

Before CAVANAUGH, WICKERSHAM and ROBERTS, JJ.

236

CAVANAUGH, Judge:

Bennie B. Rozanski died on December 17, 1980. It was alleged in the petition for grant of letters of administration that Mr. Rozanski died intestate. Letters of administration were granted by the Register of Wills to his mother, Lottie M. Rozanski. The administration of the estate proceeded and the administratrix filed an account and petition for adjudication. The account was audited and confirmed absolutely in February, 1982.

In July, 1982, Shirley Carter, a friend of the decedent's, filed a rule to show cause why the letters of administration should not be revoked and a letter dated April 26, 1978 admitted to probate as the decedent's last will and testament. The court determined that the writing was in fact testamentary in nature and letters of administration c.t.a. were issued to Lottie M. Rozanski. The court directed the filing of an account and schedule of distribution. A decree nisi was entered. Exceptions were dismissed and a final decree was entered by the court below. The administratrix c.t.a. has appealed to this court.

On appeal the appellant does not contend that the court erred in finding that the letter of April 26, 1978 was testamentary in character but rather that the devise and bequest to Ms. Carter were subject to conditions precedent and subsequent.[1] The letter of April 26, 1978 in its entirety was as follows:

1. The Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 2502 sets forth the requirements of a will and provides that: "Every will shall be in writing and shall be signed by the testator at the end thereof ..." As noted in the *Logan Estate,* 489 Pa. 29, 33, 413 A.2d 681, 683 (1980): "If the instrument is in writing and signed by the decedent at the end thereof and is an otherwise legal declaration of his intention which he wills to be performed after his death, it must be given effect as a will." The court in the first instance must examine the document and determine as a matter of law whether it shows testamentary intent with reasonable certainty, and if so the document must be admitted to probate. *Kauffman Estate,* 365 Pa. 555, 76 A.2d 414 (1950). The court below, based solely on the writing and without resort to extrinsic evidence, found that the writing was testamentary in character. We agree with this conclusion. At the beginning of the writing the decedent refers to what he wants done at his death although he

Dear Mom,

In case anything should ever happen to me, please do the following things for me.

(1) I want you to have all my stocks and bonds. The stock certificates and bonds are in a safety deposit box at the American Bank in the shopping center near Boscov's and some are at 467 Beechwood Ave., Lebanon in the cupboard with the sliding doors. I also have 2 or 3 reinvestment accounts for some stocks. They send statements out about 3 or 4 times a year. You can have everything in the safety deposit box also. I also want you to have my Connecticut Life Insurance policy (12,-500.00) and all my bank accounts. (1) Harris Savings & Loan Association in Lebanon Plaza. (2) Dauphin Deposit on State Drive in Lebanon. (3) Checking account in First Eastern Bank of Wilkes-Barre. (4) Savings account at Credit Union, V.A. Hospital, Lebanon. You can also have everything in my room at home (60 Hudson Rd., Plains, Pa.)

(2) If it can be done, and if it will not be too much of a burden, and if she can make the payments, then I would like to give my house at 467 Beechwood Ave., Lebanon, and everything in it, to Shirley. (Shirley Carter) I want her to have a *home*. I know money cannot repay her for all the years of her life I wasted. I would also like her to have my Government Insurance policy that I have with the V.A., ($20,000+). I also want her to have my automobile, 1977 Oldsmobile.

(3) I also would like you to have everything else I own, that I may have forgotten to put down here. You can if you wish to, divide anything you want to with Daniel. I would also like you to give somthing to Marilyn, Joanie and Danny Boy.

used the expression if "anything should ever happen to me." This phrase is often used to allude to the specter of death which inexorably draws closer each day, although generally unnoticed. The decedent was definite in the specific bequests to his mother and inserted a residuary clause in item 3 to dispose of any part of his estate that was not otherwise specifically devised or bequeathed.

Dear Mom, I want you to know that, you and Pop were the most wonderful mother and father anyone ever had on this earth, I can't tell you how much you both meant to me, also Josek and Daniel were the best brothers a person could ever have.

Mom, with love to all of you,

Your son,

Ben.

Ben Rozanski, 4–26–78

■ The critical part of the writing as far as this appeal is concerned is set forth in item 2 in the devise of the decedent's real estate at 467 Beechwood Avenue, Lebanon and the bequest of the contents of the house to Shirley Carter. The appellant contends that this gift was subject to a condition precedent that she could afford to maintain the real estate and that she failed to meet this condition. A condition precedent is an occurrence that must take place before a legacy under a will vests. See *Hoffman Estate,* 147 Pa.Super. 124, 24 A.2d 35 (1942); *Miller Estate,* 380 Pa. 172, 110 A.2d 200 (1955). The court below, after hearing testimony from Ms. Carter, concluded that she could afford to make the mortgage payments on the devised premises and that the condition precedent was met. Ms. Carter worked as a bookkeeper and earned approximately $11,-000.00 per year. The mortgage payments were approximately $1,800.00 per year and the taxes were about $800.00. Moreover, the language of the testamentary writing showed an intent not to put obstacles in the way of Ms. Carter receiving the gift, but rather a desire not to make ownership of the real estate onerous for her. Apparently, the decedent felt remorse for the way he treated Ms. Carter as he stated "I know money cannot repay her for all the years of her life I have wasted."

Appellant further contends that even if the house and contents were devised and bequeathed to Ms. Carter by virtue of the condition precedent having been met, that the real estate was subject to the condition subsequent that if she failed to use it as a home, the devise would be divested

and would revert to the decedent's estate. A condition subsequent is one which will divest an interest that has already vested. *Wackstetter Estate*, 420 Pa. 219, 216 A.2d 66 (1966). The reference to decedent wanting Ms. Carter "to have a *home*" did not mean that she necessarily had to live in the premises devised or she would lose the gift. It most reasonably bespeaks an intention that she have the wherewithal to have a home in which to live, either that residence or some other residence. We live in a mobile society and people constantly change their residences. Clearly, the deceased left his home to Ms. Carter and she was then free to live there or rent the property or make any other use concomitant with ownership in fee. A gift of an interest in real estate "to my wife for a home" constituted the devise of an estate in fee simple. "The words 'for a home' as used in the devise were not sufficient to restrict it to a life estate. They do not qualify in any degree the absolute gift to the wife of all the testator's interest in the land described in item 2." *Wilkinson v. Chambers*, 181 Pa. 437, 442, 37 A. 569 (1897).

In order to make the devise subject to a condition subsequent the testator would have used words of limitation and would have clearly indicated that the beneficiary could use the home only until the occurrence of a named event. Even if the language were ambiguous there is a presumption in favor of the vesting of interest. *Horvath Estate*, 446 Pa. 484, 288 A.2d 725 (1972). The law favors a vested rather than a defeasible interest. *Brubaker Estate*, 55 Lancaster L.R. 119 (1956); *Cooper v. Diamond*, 1 D. & C. 2nd 593 (Phila., 1954). Affirmed, *Cooper v. Milikovsky*, 382 Pa. 30, 112 A.2d 616 (1955)[2]. We find that the will does

**2.** In *Cooper v. Diamond, supra,* the testator devised a house to two of his children "for life, to be used by them as a home and is not to be rented or sold". The court held that the life estate was not to be forfeited although the house was rented and not used as a home as the devise was not subject to a condition subsequent. As noted at 1 D. & C. 2d 595.

It is well established that for an estate to be subject to an automatic expiration, words of "special limitation" must be used to mark the period of time for which the estate is granted, as, for example,

not indicate an intent by the testator that the devise was subject to being divested and Ms. Carter has acquired an absolute interest in the real estate.

The appellant relies on *Carroll Estate,* 8 D. & C. 2nd 526 (Montgomery County, 1956) to support the contention that the gift of the real estate was subject to divestment. In *Carroll, supra,* the testator bequeathed the sum of $3,000.00 "to be used only towards the purchase of a home for my sister." The court held that the fund could be used for no other purpose. Our case is readily distinguishable as the testator merely expressed his desire that the beneficiary have a home. In *Carroll Estate, supra,* the court pointed out at 8 D. & C. 2nd 527: "[t]he word 'only' indicates beyond doubt testator's intention that the legacy so given is to be used toward the purchase of a home for his sister *and for no other purpose whatsoever."* (Emphasis added.)

■ The appellant next contends that the court below erred in deciding that the expenses in connection with the real estate in question as maintenance, taxes, mortgage payments and other expenses were the responsibility of the decedent's estate and not the devisee's. The personal representative vigorously resisted distribution of the real estate to Ms. Carter for some three years and the estate should bear the costs of maintaining the property during this time.[3]

"during", "while", "so long as", "until", or words of similar import: A.L.I. Restatement of the Law of Property, §§ 23 and 112.

**3.** We are not unmindful of 20 Pa. § 2514 which provides:
   § 2514. Rules of interpretation
      In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

   .    .    .    .    .

      (12) Real estate subject to a mortgage. *The devisee of real estate which is subject to a mortgage shall take subject thereto, and shall not be entitled to exoneration out of the other estate of the testator, real or personal;* and this whether the mortgage was created by the testator or by a previous owner or owners, and notwithstanding any general direction by the testator that his debts be paid.
      (Emphasis added.)
   However, in this case the devisee was denied possession of the property for some three years and during part of this time the

Finally, the appellant contends that the court erred in determining that joint bank accounts in the name of the decedent and Shirley Carter became the property of Ms. Carter upon the decedent's death and were not assets of his estate. The appellant argues on appeal that the court precluded testimony concerning the joint accounts and that she should have been allowed to establish that a confidential relationship existed between the decedent and Ms. Carter a violation of which might have affected ownership of the accounts. The issue of a confidential relationship was not allowed to be raised at the hearing below on April 25, 1985. Counsel for the administratrix c.t.a. (Mr. Falchek) stated:

*By Mr. Falchek:* Your Honor, as part of our Inventory and Schedule, we did mention the fact that we believe there to be joint accounts. Subsequently either in joint names or in terms of Totten Trust situation, we believe that we can trace the proceeds of the war bonds, the cashing in of the war bonds that would have been part of the estate assets, to these specific joint accounts or Totten Trust and we believe that they should be returned back to the estate.

*By the Court:* How is that issue framed for disposition in Objections to Inventory and Schedule of Distribution? I would simply suggest to you, sir, that you file another instrument to bring this before the Court. How do I adjudicate that based upon what you have agreed to be what I am doing today, which is listening to Objections to Inventory and Schedule of Distribution. You want to bring in some assets that she apparently has. *I suggest to you that that is another lawsuit.*

*By Mr. Falchek:* On the Inventory, we did, as part of one schedule, list that we believed there to be joint accounts.

property was rented. While the devisee takes the real estate subject to the mortgage she may not be charged for any mortgage payments made by the estate prior to receiving possession of the real estate, and such charges were properly borne by the estate.

*By Mr. Langan:* They believed but they didn't specify what they are talking about.

*By the Court: Well, I am ruling right now that that is not properly before the Court.* It's going to have to be raised in another pleading. Let's move on. Mr. Langan?

(Emphasis Added N.T. 13–14)

The difficulty with which we are faced is that the court did determine the legal effect of the joint accounts and stated in its decree nisi of May 23, 1985:

4. All joint bank accounts in the name of decedent and SHIRLEY CARTER shall be treated as joint accounts with right of survivorship and thus ownership passing to SHIRLEY CARTER, but they shall be included within the Estate and taxable as joint property.

The court in its memorandum in support of the decree nisi held that "as she [the Administratrix] has presented no competent evidence whatsoever to overturn the general rule that when a deposit of funds creates a joint account with the right of survivorship and the signature card so stating is executed by both parties, a prima facie inter vivos gift to the other party and the creation of a joint tenancy with the right of survivorship is established. In this case, that presumption works in favor of SHIRLEY CARTER. *No testimony was presented by the Administratrix to dispute this fact.* The only argument is contained in the Brief of counsel for Administratrix which argues that a confidential relationship existed between SHIRLEY CARTER and the decedent. *This is a mere allegation not established anywhere of record."* [4] (Emphasis added.)

■ The estate was unfairly prejudiced when the court ruled that matters pertaining to the joint accounts were not properly before the court and then made a definitive ruling that the monies in the accounts belonged to Ms. Carter and

4. The court also stated in the Memorandum that:
    Shirley Carter must, however, provide to the Estate an accounting of the accounts so they may be properly administered and taxed in accordance with the laws of this Commonwealth.

not the estate. Presumably Ms. Carter received the funds that were in the joint bank accounts as the court directed her to account for the proceeds of the joint accounts. The ownership of the joint accounts is an estate matter as ostensibly the accounts, or part of them, may be estate assets. No testimony was allowed to be presented concerning the joint accounts and the court did not have a proper basis for determining ownership of the accounts since it precluded testimony pertaining to them.

That part of the decree nisi of May 23, 1985 pertaining to the joint accounts is reversed and the case is remanded to the court below for a hearing to determine the amounts in the various accounts and the ownership thereof. In all other respects the decree is affirmed.

We relinquish jurisdiction.