### ESTATE OF Henry P. ZUCKER, Deceased.

### Appeal of George T. Foreman, Jr., Lutheran Home at Germantown.

Superior Court of Pennsylvania.

Argued Feb. 15, 2000.
Filed Oct. 13, 2000.

---

Samuel L. Spear, Philadelphia, for Foreman, appellant.

Bruce L. Castor, Philadelphia, for Lutheran Home, appellee.

BEFORE: CAVANAUGH and BECK, JJ., and CIRILLO, President Judge Emeritus.

BECK, J.:

¶ 1 In this will contest, we decide whether a gift to remaindermen vested at the time of death of the testator or at the time of death of the life tenant. In this case the remaindermen predeceased the life tenant. We hold that the gift vested at the time of

death of the testator, and reverse the decision of the trial court.

¶ 2 The parties in this matter, appellant George T. Foreman, Jr. and appellee Lutheran Home at Germantown Foundation (Lutheran Home), contested a portion of the residual estate of the testator, Henry P. Zucker, who died on June 21, 1983. The testator left a will which gave a life estate to his daughter, Pauline N. Riddle, and ultimately a devise of the residuary estate as follows:

> I give, devise and bequeath all of my estate, real and personal, to my Trustee, hereinafter named, in trust, nevertheless, upon the following uses, purposes and trusts, to wit:
>
> A. To pay to my daughter, PAULINE RIDDLE, the sum of Two hundred Dollars ($200.00) per month from income, and if the income is not sufficient, to pay the balance from principal.
>
> B. Upon the death of my daughter, PAULINE RIDDLE, this trust shall terminate and the balance of the principal and accumulated income, if any, shall be paid as follows:
>
> 1. One half (½) thereof to the LUTHERAN HOME FOR ORPHANS AND AGED AT GERMANTOWN, Philadelphia, Pa.
>
> 2. One half (½) thereof to GEORGE T. FOREMAN and ETHEL C. FOREMAN, his wife, in equal shares, or to the survivor of them.

R.R. 2a. Prior to the death of the life tenant, Pauline Riddle, on December 16, 1995, remaindermen George T. and Ethel C. Foreman died. They are survived by their son appellant George T. Foreman, Jr.

¶ 3 The trustee's account for the testator was called to audit before the Orphans' Court of the Common Pleas Court of Philadelphia County. The court filed an adjudication granting leave to the accountant to effect distribution of the entire residuary estate[1] to appellee Lutheran Home, because George and Ethel Foreman had predeceased the life tenant. George T. Foreman, Jr., the son of Mr. and Mrs. Foreman, filed exceptions which were denied by an *en banc* panel of the Orphans' Court, and the adjudication was confirmed. This timely appeal followed.

¶ 4 In his appeal, appellant asserts that the Orphans' Court erred when it: 1) improperly construed the intent of the testator; 2) misapplied binding appellate precedent regarding will construction; and 3) construed the will in a way inconsistent with the overall testamentary plan and scheme of distribution. We decide that the Orphans' Court erroneously awarded the entire residuary estate to appellee, the Lutheran Home, and therefore reverse and remand.

■ ¶ 5 We have not found, and the parties have not directed us to, a binding case that addresses the precise factual setting presented here. In will cases, of course, this is not unusual, since "few wills have a twin brother," and precedents are often of little value in interpreting a will. *Newlin Estate*, 367 Pa. 527, 80 A.2d 819 (1951) *superseded on other grounds Weaver's Estate*, 392 Pa.Super. 312, 572 A.2d 1249 (1990); *Kidd's Estate*, 293 Pa. 56, 141 A. 730 (1928). Instead, it is well established that

> "[t]he testator's intention is the polestar in the construction of every will and that intention must be ascertained from the language and scheme of his [entire] will [together with the surrounding facts and circumstances]; it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words."

---

**1.** There was no objection to the account which shows a combined balance of principal and income of $135,994.11. Tr. Ct. Opinion dated January 7, 1999 at 5.

*Houston Estate*, 414 Pa. 579, 586, 201 A.2d 592, 595 (1964) (quoting from *Kelsey Estate*, 393 Pa. 513, 143 A.2d 42 (1958) (citations and emphasis omitted)). It is when the language of a will is ambiguous that we must resort to canons of construction. *Horvath Estate*, 446 Pa. 484, 288 A.2d 725 (1972). Here, the language of the will seems to create an ambiguity regarding when the remainder interests vested, *i.e.*, at the time of testator's death or at the time of the life tenant's death. We therefore consider some guiding principles when determining the meaning of the testator's words.

¶ 6 Among these principles is the presumption that a testamentary estate or interest will always be regarded as vested unless the language plainly, manifestly, and indisputably indicates the testator's intention to create a contingent estate or interest. *Horvath Estate, supra; Houston Estate, supra; Rozanski Estate*, 356 Pa.Super. 234, 239–40, 514 A.2d 587, 590 (1986).

¶ 7 In this case, the question is whether at the time of the testator's death the Foremans received a vested interest in the residuary estate, such that their share would pass to their estates upon their death, even if they predeceased the life tenant. The Orphans' Court held that the Foremans' interest was contingent upon their outliving the life tenant. However, we do not view the language of the bequest as "plainly, manifestly, and indisputably" indicating that this was the intention of the testator.

¶ 8 Instead, we are persuaded that the Foremans took a vested interest upon the testator's death, contingent only upon the continued existence of a "balance of principal and accumulated income, if any," remaining at the life tenant's death. R.R. 2a. This condition, of course, was satisfied.

¶ 9 We are further aided in our consideration of the problem by hornbook law and decisions of our courts:

The general rule is that, in absence of a disclosed contrary intention, when a testator makes a gift of an intermediate estate, such as a life estate, with a remainder to the survivors of a group of beneficiaries, the survivors will be held to be those members of the group who survive not the life tenant or intermediate beneficiary, but the testator himself ... This rule permits estates to be considered vested rather than contingent ...

40 P.L.E. Wills § 394.

¶ 10 In *Bald Estate*, 385 Pa. 176, 122 A.2d 294 (1956), our Supreme Court reached the same conclusion under similar circumstances as those presented here. In that case, the testator created a life estate in his aunt, Kate Bald, and bequeathed the residuary estate, in seven equal shares, to seven named individuals and institutions, all of whom survived the testator. However, two of the remaindermen predeceased the life tenant, and it was their interests that were in dispute in the case. The question presented to the court was "whether the will of the testator bequeathed to the residuary remaindermen an interest which vested at the death of the testator or an interest contingent upon their surviving the ... life tenant." *Id.* at 177, 122 A.2d at 295. The answer to the question would determine whether the deceased remaindermen's estates would receive their one-seventh share, or whether those shares would go to the remaindermen who survived the life tenant.

¶ 11 This is the very question at issue in the instant case. The Supreme Court in *Bald Estate* held that the testator intended each remainderman to have a vested interest in one-seventh of the residuary estate, and that such interest would not be affected by the fact that two remaindermen predeceased the life tenant. *Id.* at 189, 122 A.2d at 300. *See also Blough Estate*, 474 Pa. 177, 378 A.2d 276 (1977) (remainderman's interest not defeated because she predeceased life tenant); *Horvath Estate, supra* (niece with

remainder interest but who predeceased life tenant had vested interest at death of testator and her widower would receive her residuary share); *McCauley Estate*, 257 Pa. 377, 101 A. 827 (1917) (testator's will provided no reason to infer that gift over to children after life estate was subject to condition that children survived life tenant; remainder interests were presumed to be vested); Summ.Pa.Jur.2d Probate, Estates & Trusts § 3:10 (it is not necessary that the remainderman survive the life tenant for the interest of the remainderman to vest).[2]

■ ¶ 12 Nonetheless, appellee argues that the language in the testator's bequest referring to "George T. Foreman and Ethel C. Foreman, his wife, in equal shares, *or to the survivor of them,*" created a condition that the Foremans survive the life tenant in order to receive their share of the residuary estate. Appellee relies on *Loving Estate*, 159 Pa.Super. 339, 48 A.2d 39 (1946), as support for its position. We first note that *Loving Estate* was a decision of the Superior Court and obviously does not overrule contrary decisions of our Supreme Court. We further note that the *Loving* court relied, in part, on the "pay and divide rule," which was later abolished by the Supreme Court.[3] *Dickson Estate*, 396 Pa. 371, 152 A.2d 680 (1959). Moreover, our Supreme Court has held that "the general rule in Pennsylvania is, and always has been, that the words 'survivor' or 'surviving' following a prior gift, are

understood as referring to the death of the testator, unless an intent of the testator to refer them to some other time is plainly and manifestly shown...." *Black v. Woods*, 213 Pa. 583, 63 A. 129 (1906). We do not find that such contrary intention was plainly and manifestly shown in this case.

¶ 13 Appellee makes the argument that the testator must have intended to give his residuary estate to living persons, rather than the estates of dead remaindermen. This argument was also made and rejected in *Blough Estate, supra*, where the court held that the residuary estate vested in the remainderman at the death of the testator, and the remainderman's death prior to the life tenant did not divest her of that interest.

¶ 14 Finally, appellee relies upon *Deacon Estate*, 2 Pa.D. & C.3d 711 (Montg.Cty. 1977), a common pleas court decision which is clearly not binding precedent. The case is also distinguishable on its facts. There the testator created a life estate for one of his children, and upon her death, he directed that "principal of the share held for her in Trust shall be paid over equally, share and share alike, *to my three sons or the survivors of them,* free and clear of any restrictions." All three sons survived the testator, but two sons predeceased the life tenant. The question was whether the estates of the dead sons could share in the residuary estate or if the one son who survived the life tenant

---

**2.** We have found application of the rule in other jurisdictions as well. *In re Childress Trust*, 194 Mich.App. 319, 486 N.W.2d 141 (1992) (possibility of the death of remainderman before life tenant does not prevent remainderman's taking vested interest in remainder); *Peadro v. Peadro*, 400 Ill. 482, 81 N.E.2d 192 (1948) (share of vested remainderman who dies before life tenant passes to his heirs); *Armstrong v. Merts*, 202 Ga. 483, 43 S.E.2d 512 (1947) (same).

**3.** The rule was described in *Loving Estate*, in a situation where the testator instructed that his estate shall be equally divided between two remaindermen, as follows:

[W]here there is a direction to pay and divide, but there is no separate and antecedent gift which is independent of the direction and time for payment, the legacy is *contingent.* The reason for the rule is that the gift itself is only *implied from a direction to pay.* Such a gift is necessarily separable from the direction, and hence must partake of its quality. If the direction is future and contingent so must the gift be.

159 Pa.Super. at 342, 48 A.2d at 40 (emphasis in original). "Whatever may have been the justification for the origin of this judicially created technical Rule, it has vanished, leaving in its wake a welter of conflict and confusion." *Dickson Estate*, 396 Pa. at 374, 152 A.2d at 682. It was therefore abolished. *Id.*

should take the entire estate. The court acknowledged the general rule that language of survivorship refers to the death of the testator, but that the "rule was not iron-clad if a contrary intent was apparent." *Id.* The court held that the language of the will provided a contrary intent, and measured survivorship from the death of the life tenant. In other words, the gift did not vest until the death of the life tenant. *Id.*

¶ 15 Under the language of the will in *Deacon Estate*, which identified the only remaindermen as "three sons or the survivors of them," that conclusion makes sense. If the language in Zucker's will referred to the remaindermen in a series, such as the "Lutheran Home, George T. Foreman, and Ethel C. Foreman, or the survivor of them," *Deacon Estate* would be on point. Such language might direct that only the remaindermen who were living (or in existence) at the time of the life tenant's death would take the residuary estate. *See also Loving Estate, supra* (remainder to be "equally divided between my sister Margaret Johnson and my niece Anne E. Nickless or the survivor of them"). However, Zucker's will is constructed differently; it divides the remainder into two shares and describes the beneficiaries in two separate paragraphs, rather than in a series. The "survivorship" language plainly refers only to the married couple—the Foremans are the only ones listed in the series modified by the survivorship language. By this device, Zucker intended that if only one of the couple survived the life tenant, he or she would receive the entire one-half portion. It does not mean that, among the Foremans and the Lutheran Home, only those who survived the life tenant would receive a vested remainder interest.

¶ 16 We hold that the remainder interest of the Foremans did vest at the time of the testator's death, and that it should now be paid to their estates. We therefore reverse the decision of the Orphans' Court below, which directed payment of the entire residuary estate to appellee, and remand the matter for further proceedings consistent with this opinion.

¶ 17 Reversed and remanded. Jurisdiction relinquished.

¶ 18 President Judge Emeritus CIRILLO files a Dissenting Opinion.

CIRILLO, President Judge Emeritus, dissenting:

¶ 1 I respectfully dissent. The gift to the Foremans fails according to its own terms. Contrary to the majority's finding, it is not apparent from the language of the will that the testator "gave and intended to give absolutely to each of his [remainderman]." *Bald Estate*, 385 Pa. 176, 180, 122 A.2d 294, 296 (1956). The testator's intent was to primarily benefit his daughter and not the remainderman. In this case, the testator did not make "an unqualified, absolute gift of a pecuniary legacy" to the Foremans. *Id.* There were conditions, limitations or contingencies attached to the Foremans' gift.

¶ 2 We examine the exact language of the will in order to ascertain the testator's/decedent's intent:

SECOND: I give, devise and bequeath all of my estate, real and personal, to my Trustee, hereinafter named, in trust, nevertheless, upon the following uses, purposes and trusts, to wit:

A. To pay to my daughter, PAULINE RIDDLE, the sum of Two Hundred Dollars ($200.00) per month from income, and if the income is not sufficient, to pay the balance from principal.

B. Upon the death of my daughter, PAULINE RIDDLE, this trust shall terminate and the balance of principal and accumulated income, if any, shall be paid as follows:

1. One-half (½) thereof to the LUTHERAN HOME FOR ORPHANS AND AGED AT GERMANTOWN, Philadelphia, Pa.

2. One-half (½) thereof to GEORGE T. FOREMAN and ETHEL C. FOREMAN, his wife in equal shares, or to the survivor of them.

It is plain from the language of the will that there was an alternative attached to the gift to the Foremans, which indicates a contingent estate or interest. *Bald, supra* at 298. There is language in the will to support the contingent nature of the Foremans' gift: (1) the Foremans could not take until the termination of the trust at the death of the testator's daughter; (2) if there was the continued existence of a "balance of principal and accumulated income," then the Foremans could take; and (3) only the "survivor of them" was eligible to receive the gift. The trial court found that the gift to the Foremans should vest, if at all, on the death of the testator's daughter. The gift lapsed "because both George and Ethel died in the lifetime of the testator's daughter."

¶ 3 The language of the gift to the Foremans was interpreted by the trial court and, in its *en banc* opinion, the court correctly determined that the testator's intent was "primarily benefiting his daughter by establishing a trust solely for her benefit during her lifetime." Only three specific remaindermen were named, to wit, the Lutheran Home, Mr. Foreman and Mrs. Foreman. None of the remaindermen shared any type of familial relationship with the testator. Furthermore, if the testator "wanted to benefit the son of the Foremans, he would have made a specific provision for him."

¶ 4 Only where there is ambiguity are the canons of construction used to interpret the language of a will. *Hovarth Estate*, 446 Pa. 484, 487, 288 A.2d 725, 726 (1972); *Blough Estate*, 474 Pa. 177, 185, 378 A.2d 276, 280 (1977). If the testator's intent can be ascertained on the will's face, the canons of construction "become an arbitrary fetter instead of a mere instrument for the ascertainment of the testator's intent." *Loving Estate*, 159 Pa.Super. 339, 48 A.2d 39, 41 (1946) (*citing Mulliken v.*

*Earnshaw*, 209 Pa. 226, 229–30, 58 A. 286 (1904)). There is no sound reason in the nature of things why the actual meaning of the person using the words should not be sought in the case of a will. *Id.* Absent ambiguity, intent is to be determined from the "four corners of [the] will." *Blough, supra* at 280 (*citing Estate of Jacobson*, 460 Pa. 118, 122, 331 A.2d 447, 449 (1975)). The trial court correctly determined that the "reasonable and most simplistic meaning to be applied are the meaning of the words of the testator." In this case, there was no ambiguity because the testator had no intent to benefit the son of the Foremans. His intent was to benefit his daughter and, if possible, the Lutheran Home and the Foremans or the "survivor of them."

¶ 5 Furthermore, the trial court found the use of the words "survivor of them" to mean that if Husband should survive Wife, he would take her one-quarter share or the total one-half share of the gift. The reverse being true for Wife. Use of the word "survivor" has been construed to refer "only to living persons and not to the estates of the dead." *Loving Estate, supra* at 41. The testator had no purpose to benefit the son of the Foremans. The testator could have made specific mention of him in the will. The conclusion is drawn that the primary purpose of the will was to benefit the testator's daughter and, if possible, to benefit the Lutheran Home or Mr. or Mrs. Foreman.

¶ 6 The general rule in interpreting wills favors a vesting interest as opposed to a contingent interest in order to avoid intestacy regarding primary beneficiaries. *McCauley's Estate*, 257 Pa. 377, 381, 101 A. 827, 828 (1917); *Fields Estate*, 58 Pa. D. & C. 641 (O.C.Phila.1947). There is no intestacy as a result of the trial court's interpretation of this will. The primary beneficiary of the will, the testator's daughter, had benefited from the use of her life estate prior to her death. The residuary gift does not completely lapse because the Lutheran Home was deter-

mined to be the appropriate taker under the will. The canons of construction are inapplicable in the interpretation of this will because there is no ambiguity. *Hovarth, supra.*

¶ 7 Therefore, I would affirm the trial court's decision based upon the fact that the gift to the Foremans lapsed because they both predeceased the life tenant.