**In Re: Evelyn SMITH, an incapacitated person.**

**Appeal of: Patrick J. Randall.**

Superior Court of Pennsylvania.

Argued Dec. 6, 2005.
Filed Jan. 12, 2006.

---

**3.** We commend Deputy District Attorney John F.X. Reilly on the quality of his appellate brief.

David S. Bloom, Pittsburgh, for appellant.

Timothy F. Burke, Pittsburgh, for appellee.

BEFORE: KLEIN, PANELLA, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

· ¶ 1 Patrick J. Randall appeals a Decree of the Orphans' Court surcharging him a total of $47,637.25 to recover fees Randall improperly collected or disbursed as guardian of the person and estate of Evelyn Smith, an incapacitated person (Smith), and Administrator c.t.a. of the estate of Smith's husband. Randall asserts, *inter alia*, that the court entered its order on the basis of insufficient evidence and without reaching the requisite finding that Randall had breached his fiduciary duties. In view of our deferential standard of review of orders of the Orphans' Court, we find no basis on which to grant the relief Randall seeks. Accordingly, we affirm the Decree granting a surcharge.

¶ 2 This matter arose following allegations by Timothy F. Burke, Jr., Esquire, Evelyn Smith's Guardian *Ad Litem,* that Randall improperly charged her estate and that of her deceased husband for administrative expenses and fees and negligently incurred almost $30,000 in income taxes at Smith's expense. Smith is the surviving spouse of Howard Smith, who died in December 2001. In January 2002, the Orphans' Court adjudged her incapacitated and appointed Randall as guardian of her person and estate. Randall, in turn, retained Attorney George Handelsman, who learned that Howard Smith and Evelyn Smith kept a safe deposit box at Allegheny Valley Bank in Pittsburgh. Ostensibly to obtain access to the contents of the box, Attorney Handelsman opened an estate in the Office of the Allegheny County Register of Wills and obtained Letters Testamentary in favor of Randall as administrator.

¶ 3 Subsequently, Randall and Handelsman inventoried the Smiths' safe deposit box and discovered $40,213 in cash and jointly held U.S. Savings Bonds, Series E and EE, the redemption value of which was $374,633.60. In addition, the Smiths' held a checking account and certificates of deposit as joint tenants with right of survivorship, the total value of which was $59,159.10. Randall filed his inventory as guardian of the estate of Evelyn Smith on June 18, 2002, disclosing only the value of the certificates and checking account. Subsequently, Randall redeemed all of the savings bonds and received a check drawn on the Federal Reserve Bank of Philadelphia payable in his name as Guardian of

the Estate of Evelyn I. Smith, which he then deposited in Smith's guardianship account.

¶4 Thereafter, on September 9, 2002, Randall, acting on behalf of both estates, executed a family settlement agreement, waiving full administration, inventory, account, and distribution of the Estate of Howard Smith and granting Evelyn Smith a 100% residuary interest. Randall then deposited the cash recovered from the safe deposit box into an account titled to the Estate of Howard J. Smith and paid fees to himself and Attorney Handelsman of $11,250 each. Upon filing Howard Smith's inheritance tax return, Randall declared those amounts as expenses and reported the husband's 50% interest in the value of the U.S. Savings Bonds he had redeemed. The following spring (2003), Randall declared all of the proceeds from the Estate of Howard Smith as income on Smith's individual tax return. The resulting tax liability exceeded $100,000.

¶5 On June 21, 2003, Randall filed his First and Partial Account as Guardian of the Estate of Evelyn Smith. In addition to taxes, the Account documented $1668.16 in administrative expenses, as well as two payments of guardian's fees to Randall ($6,503.21 and $13,123.04), and attorneys fees of $1547. In a separate Petition for Allowance of Fees and Expenses, Randall requested the court's approval for payment of additional guardian's fees of $25,186.25 and attorney's fees of $3527. The Petition revealed hourly rates between $75 and $80 for both Randall's services and those of Randall's clerical assistant and bookkeeper, Eldavee Baun. The total for Baun's services reached $6986.25.

¶6 On October 2, 2003, the Orphans' Court appointed Attorney Timothy F. Burke, Jr., as Guardian *Ad Litem* for Smith. Burke promptly filed objections to the Account and a response to Randall's

Petition for Allowance of Fees and Expenses, challenging the reasonableness of the fees Randall had paid to himself, as well as those he paid to Eldavee Baun. Burke also challenged the amount of income tax paid, asserting that had Randall redeemed the bonds over a period of two years rather than simultaneously, he could have realized a tax savings to Smith of approximately $29,000. Burke requested accordingly that the Orphans' Court surcharge Randall for excess compensation paid to Randall as Guardian, including amounts paid to Eldavee Baun, as well as excess compensation paid to Attorney Handelsman relating to administration of the Estate of Howard Smith. Additionally, Burke requested a surcharge for $29,401 to recover the amount of tax overpaid upon Randall's redemption in a single tax year of all of the U.S. Savings Bonds. The Honorable Frank Lucchino, A.J., granted Burke's petition in substantial part, surcharging Randall for the fees attributable to Eldavee Baun, the excess federal tax paid, and Randall's administrator's fee paid by the Estate of Howard Smith.

¶7 Randall has now filed this appeal, stating the following questions for our review:

I. Did the [trial] court commit an error of law and/or abuse its discretion in surcharging the former guardian of the person and the estate, Patrick J. Randall?

II. Did the [trial] court commit an error of law and/or abuse its discretion in ordering a surcharge against the former guardian of the person and the estate, Patrick J. Randall, that was not supported by competent expert and/or lay testimony and/or evidence of record?

III. Did the [trial] court commit an error of law and/or abuse its dis-

cretion in ordering a surcharge against the former guardian of the person and the estate, Patrick J. Randall, when the burden of proof was not sustained by those seeking the surcharge?

IV. Did the [trial] court commit an error of law and/or abuse its discretion in ordering that only a portion of the guardianship fees be paid to the former guardian of the person and the estate, Patrick J. Randall?

V. Did the [trial] court commit an error of law and/or abuse its discretion in not ordering a reasonable and just fee for clerical services rather than no fee at all?

VI. Did the [trial] court commit an error of law and/or abuse its discretion in surcharging the former guardian of the person and estate, Patrick J. Randall, without consideration of the defense of advice of counsel and that he acted in good faith as to the actions which the [trial] court held were improper, inappropriate and unnecessary?

VII. Did the [trial] court commit an error of law and/or abuse its discretion in surcharging the former guardian of the person and the estate, Patrick J. Randall, without a finding that he breached his fiduciary duties and/or did not act prudently and/or with due care in his actions as guardian of the person and the estate and by seemingly assigning a higher fiduciary duty and/or responsibility to him then [sic] was permissible under applicable law and facts?

Brief for Appellant at 4. Before proceeding, we are compelled to note that the foregoing statement of the questions involved is overlong, appearing to fragment the issues for our consideration by assigning different question numbers to arguments that in fact address the same issue and advocate the same conclusion. This observation is borne out by the organization of Randall's brief, which does not correspond to the statement of the questions involved, but instead poses four designated challenges with supporting arguments. Since appellee Smith, through her guardian *ad litem*, has not included a counter-statement in her brief, we will address Randall's questions by reference to his argument, to the extent that each of the four designated sections is reflected in a question he has posed in the foregoing statement. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"); 2101 (Conformance with Requirements).

Our standard of review of the findings of an orphans' court is deferential.

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*In re Estate of Geniviva*, 450 Pa.Super. 54, 675 A.2d 306, 310 (1996) (internal citations omitted). However, "we are not constrained to give the same deference to any resulting legal conclusions." *Id.* "[W]here the rules of law on which the [court] relied are palpably wrong or clearly inapplicable, we will reverse the [court's] decree."

*In re Estate of Harrison*, 745 A.2d 676, 678–79 (Pa.Super.2000) (some citations omitted).

¶ 8 In support of his first challenge, Randall asserts that the Orphans' Court assessed the surcharge on the basis of legally insufficient evidence. Brief for Appellant at 8. Randall's argument appears to hinge, however, not upon a genuine absence of evidence, but rather, upon an absence of fact testimony to document conduct in violation of Randall's fiduciary duty. Brief for Appellant at 11 ("[A]rgument by counsel and their filings are not proper support for a surcharge. Only a record complete with proper witness testimony and admitted evidence can support a surcharge."). Randall argues further that the record lacks expert testimony sufficient to sustain Attorney Burke's allegations that the manner in which Randall redeemed the U.S. Savings Bonds inured to Smith's detriment. Brief for Appellant at 13–14 ("More importantly, as shown by the inconsistencies in the calculated numbers, as to a specialized issue such as taxes, there has to be expert testimony to support a claim that too much tax was paid and that had a different plan been followed, less tax would have been paid."). We find no merit in either of these arguments, as they presuppose that the burden of persuasion remained with Attorney Burke and never shifted to Randall. Such a premise is not supported by the record. Because our discussion of this issue bears directly on the arguments Randall posits in sections I and IV of his brief, we will address them together.

¶ 9 We acknowledge, as Randall contends, that "[w]hen seeking to impose a surcharge against an executor [or guardian] for the mismanagement of an estate, those who seek the surcharge bear the burden of proving the executor's wrongdoing." *Estate of Geniviva,* 450 Pa.Super. 54, 675 A.2d 306, 311 (1996). Nevertheless, "where a significant discrepancy appears on the face of the record, the burden shifts to the executor to present exculpatory evidence and thereby avoid the surcharge." *Id.* As the Orphans' Court recognized, such irregularities do appear on the face of the record in this case; indeed, their very flagrance is what moved Smith's guardian *ad litem* to challenge Randall's conduct of the respective estates. Contrary to Randall's argument that the record validates his financial management decisions, Brief for Appellant at 28–29, and that his failings rose no higher than mistakes in judgment, Brief for Appellant at 30–31, his own filings reveal discrepancies so substantial as to render a surcharge all but unavoidable in the absence of strong countervailing evidence.

¶ 10 The most notable and costly of those discrepancies was Randall's premature redemption of the Smiths' jointly held U.S. Savings Bonds. Notwithstanding Randall's argument that such a discrepancy must be substantiated by expert testimony due to the complexities of the Internal Revenue Code, Brief for Appellant at 13–14, the discrepancy manifest here is quite simple. The Orphans' Court, in the exercise of its discretion, was entitled to take notice of the taxation schedule for the years in which Randall could have redeemed the bonds and to discern, through the application of simple arithmetic, that the tax code imposes a greater burden of taxation on higher amounts of income. *See Murray Co., Inc., v. Commonwealth of Pa.,* 42 Pa.Cmwlth. 571, 401 A.2d 412, 414 (1979) (taking judicial notice of Internal Revenue Service instruction forms for corporate income tax of patronage dividends). Moreover, Attorney Burke, in his Objections to Guardian's First and Partial Account, offered a "Pro–Forma Income Tax Computation," with citation to authority, documenting the amount of excess income tax Randall paid on behalf of Smith's estate. *See* Objections to Guardian's First and Partial Account, Exhibit "F". The

Computation compares the amount of tax paid following Randall's redemption of the Bonds in a single year with the reduced amount of tax that would have been assessed had Randall redeemed the Bonds over three years. This evidence makes manifest the extent of Randall's failure of stewardship in safeguarding the assets of his ward from excessive taxation.

¶ 11 We find no material distinction between the discrepancy apparent here and that shown in *Estate of Geniviva*, 675 A.2d at 311, a case upon which Randall relies to suggest that the burden of proof did not shift. In *Estate of Geniviva*, we affirmed a finding of the Orphans' Court that the executor's failure to file federal estate tax returns and Pennsylvania inheritance tax returns for four years after the decedent's death constituted a facial discrepancy sufficient to shift the burden of proof. *See* 675 A.2d at 311. We reached our determination notwithstanding the executor's reliance on advice of counsel. *See id.* The same determination is in order here. Although, unlike Geniviva's executor, Randall filed appropriate tax returns, the record leaves no doubt that he placed Smith in an extremely disadvantageous tax position, compelling her to pay a minimum of $29,000 more in federal income tax on the proceeds of her husband's estate than she need have paid. Given this rather stark shortcoming, we conclude that the burden of proof did shift on this issue, compelling Randall to offer a reasonable explanation for why he redeemed all of the bonds in the same tax year and why he failed to consult a tax professional. *See In re Estate of Maurice*, 433 Pa. 103, 249 A.2d 334, 336 (1969) (concluding that Orphans' Court erred in failing to impose burden of proof on executor to provide a reasonable explanation for his actions following demonstration by estate heirs that he had substantially overpaid federal estate tax). Because the burden of proof

shifted, Randall's argument of evidentiary insufficiency is of no merit as it applies to this point.

 ¶ 12 The burden shifted as well on the remaining two components of the surcharge; i.e., Randall's charges of $75 to $80/hour for a clerical assistant, and his charge of $11,250 for services rendered as Administrator c.t.a. of the Estate of Howard Smith. Concerning the latter charge, Randall compensated himself at the rate of 5% of the value of the probate estate. We have held that compensation of an estate's fiduciary at that same flat rate is not excessive, provided that the complexity of the estate merits it. *See Estate of Harrison*, 745 A.2d at 683. As the Orphans' Court recognized here, however, all of the property in the Estate of Howard Smith was jointly held and would have descended to his wife by operation of law even had a probate estate never been opened. *See Estate of Allen*, 488 Pa. 415, 412 A.2d 833, 838 (1980) ("A joint tenancy with right of survivorship having been created and not terminated at the death of one tenant, the law is too well settled to be gainsaid. The Orphans' Court properly held that the funds passed outside the estate to the party having the right of survivorship."). Thus, not only was administration of Howard Smith's estate simple; it was unnecessary. There can be no legitimate purpose in opening an estate where no property remains to be apportioned from the estate. Under such circumstances, the estate's payment to a fiduciary of $11,250 reveals a discrepancy so substantial as to require a shift of the burden of proof to require the fiduciary to explain the necessity of his services. Because the burden of proof shifted to Randall, his argument of evidentiary insufficiency is of no merit as it applies to this point.

¶ 13 Concerning Randall's charges for clerical work, the same conclusion is in order. The Orphans' Court determined that charges of $75 to $80/hour for the services of an office assistant were not only unreasonable, but improper. Trial Court Opinion, 4/12/05, at 3. Randall conceded that the rate charged for this time was excessive and argued as an alternative that he was "entitled to some clerical fee of $10 or $15 an hour." N.T., 6/25/04, at 48. The court rejected Randall's request on grounds that clerical assistance is to be compensated as part of a fiduciary's overhead and is not independently chargeable to the estate. Trial Court Opinion, 4/12/05, at 3. Neither party presents controlling precedent on this point and we are aware of none. Nevertheless, we concur in the assessment of the Orphan's Court. Where the fiduciary himself and others in his employ charge rates of $80/hour, the assessment of a separate clerical fee at any level is irregular and sufficient, in our view, to shift the burden of proof to the fiduciary to explain why such charges are necessary. Randall failed to do that here and now belatedly attempts to argue that Eldavee Baun was in fact a paraprofessional whose services may be separately itemized as estate administration costs. *See* Brief for Appellant at 21 (citing *Vitac Corp. v. Workers' Comp. Appeal Bd. (Rozanc)*, 578 Pa.574, 854 A.2d 481, 486 (2004) (determining that fees for the services of paralegals, law clerks, and recent law school graduates may be itemized as attorneys' fees under section 440(a) of the Workers' Compensation Act)). Nevertheless, Randall offers no indication that he presented this argument to the Orphans' Court. Hence, we decline to consider it here. Because the burden of proof shifted to Randall to show the necessity of separately itemized clerical expenses, his argument of evidentiary insufficiency is of no merit as it applies to this point.

¶ 14 In section II of his argument, Randall contends that the Orphans' Court abused its discretion in imposing the surcharge without considering his defense that he acted in good faith upon the advice of counsel. Brief for Appellant at 16. Randall argues that counsel for the respective estates, Attorney Handelsman, was in fact the "captain of the ship," in whom he trusted as one educated in the law to make the most consequential decisions, including the redemption of all of the Smiths' U.S. Savings Bonds in a single tax year. Brief for Appellant at 19. Randall argues specifically that because he asserted his reliance upon counsel in testimony adduced at the hearings on Attorney Burke's objections, the court abused its discretion in not crediting advice of counsel as a defense. Brief for Appellant at 19–20.

¶ 15 Our Supreme Court has recognized that "[w]here a fiduciary acts upon the advice of counsel, such fact is 'a factor to be considered in determining good faith, but is not a blanket of immunity in all circumstances.'" *In re Lohm's Estate*, 440 Pa. 268, 269 A.2d 451, 455 (1970).

> There are two aspects to this 'factor' which must be weighed in deciding whether the fiduciary may defend against a surcharge attempt on the basis of reliance upon the advice of counsel. The initial choice of counsel must have been prudent under all the circumstances then existing, and the subsequent decision to rely upon this counsel must also have been a reasonably wise and prudent choice.

*Id.* Attempting to address these two "aspects," Randall argues that he, as a social worker, was burdened by a gap of knowledge and experience of the duties of a fiduciary, rendering his reliance upon Attorney Handelsman a reasonable course of action. Brief for Appellant at 16 ("Randall

was a social worker and not a financial planner. This is why Randall utilized the services of Attorney Handelsman who advised him what to do as to the financial aspects of the Guardianship and Administration of the two different Estates."). Nonetheless, Randall fails to explain why his initial choice of Handelsman's counsel was particularly prudent. As our Supreme Court recognized in *Lohm's Estate,* not all attorneys are sufficiently experienced in estate administration to accept primary responsibility for the weighty decisions attendant to it. *See* 269 A.2d at 275 (addressing defense of advice of counsel made by attorney-executor who had little experience in estate and tax matters who relied on retained counsel to make estate's financial decisions). Randall's blanket claim of his own inexperience does not resolve this issue. We conclude accordingly, that Randall failed in his burden to establish grounds upon which the Orphans' Court *could* have credited his defense. Thus, we find no abuse of discretion in the Orphans' Court's treatment of this issue.

¶ 16 Finally, in section III of his argument, Randall contends that the Orphans' Court erred in disallowing the clerical fees paid to Eldavee Baun and his own administrator's fee for administration of the Estate of Howard Smith. Brief for Appellant at 20, 22. We have discussed the court's disallowance of clerical fees, *supra,* and need not repeat that discussion here. Concerning the court's disallowance of his administrator's fee attributable to the Estate of Howard Smith, Randall argues that the Estate of Howard Smith and the Estate of Evelyn Smith were significantly intertwined and that, accordingly, the court erred in disallowing the fee. Brief for Appellant at 24. In support, he asserts our observation in *In re Estate of*

*Preston* that "fees and commission may be imposed for the administration of jointly-held property which passes outside the estate." Brief for Appellant at 24 (quoting 560 A.2d at 160, 164 n. 10 (Pa.Super.1989)). Regrettably, however, Randall fails to acknowledge our injunction in that same footnote that "to collect such fees, the executor and his counsel must prove their reasonableness and appropriateness." *See Estate of Preston,* 560 A.2d at 164, n. 10. As we concluded in our discussion of the burden of proof, *supra,* Randall failed in that regard. Moreover, as we recognized also in *Estate of Preston,* "jointly-held property passes outside of a decedent's estate and should not be included in an estate's assets for purposes of computing an executor's commissions and an attorney's fees." *Id.* at 164. Inasmuch as all of the property in Howard Smith's estate was contained in a jointly-held safe-deposit box and the U.S. Savings Bonds in the box specifically bore the parties names as joint tenants, the 5% fee that Randall imposed as administrator could not have amounted to the $11,250 he claimed. Even if the flat 5% rate could have been deemed proper, 5% of nothing is still nothing. Accordingly, we find no error in the Orphans' Court's surcharge either as concerns disallowance of the clerical fees charged for the services of Eldavee Baun, or in the disallowance of Randall's $11,250 administrator's fee.

¶ 17 For the foregoing reasons, we affirm the Decree of the Orphans' Court.

¶ 18 Decree **AFFIRMED.**