In re ESTATE OF Samuel W. HARPER, Deceased.

Appeal of Samuel Carl Harper, Executor and Beneficiary, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 2, 2008.

Filed June 1, 2009.

MaryJo Corsetti, Pittsburgh, for appellant.

William C. Kaczynski, Pittsburgh, for appellee.

BEFORE: FORD ELLIOTT, P.J., DONOHUE and COLVILLE,* JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 Samuel Carl Harper, executor and beneficiary of the estate of Samuel W. Harper, appeals the order of August 3, 2007. We affirm, finding that 1) the orphans' court did not err in reducing the amount of the executor's commission and denying certain claims; and 2) that the words "share and share alike" in the testator's Last Will and Testament ("Will") did not evidence a clear intention to override the anti-lapse statute.

¶ 2 The Honorable William J. Ober has summarized the facts as follows:

Samuel W. Harper (Testator) died testate on July 27, 2005. Testator's Will

pertinently provided that the residue of his estate would be distributed to his two sons, Executor/Appellant and William D. Harper, 'share and share alike.' However, William D. Harper predeceased Testator, leaving as issue one adult child, William N. Harper (Objector).

Executor filed a First and Final Account and Schedule of Distribution, in which he proposed to distribute 100% of the Estate to himself. Objector challenged the proposed distribution, arguing that he should take the share of his deceased father pursuant to the Anti–Lapse Statute. Objector also objected to the first and final account concerning the disputed the [sic] validity of several claims and the amount of the personal representative's commission.

On March 13, 2007, this Court sustained the Objector's objections and ordered the Executor to distribute one-half of the distributable estate to Objector and scheduled a date for hearing testimony regarding the other objections to the First and Final Account. Meanwhile, Executor filed exceptions to the Court's ruling of March 13, 2007 regarding application of the Anti–Lapse Statute. At a hearing on May 29, 2007, the Court disallowed the disputed claims by the Executor in the amount of $11,000.00 and reduced the personal representative's commission to $16,324.85. On the record at that hearing, the Court also denied Executor's exceptions filed on March 29, 2007. This appeal ensued.

Orphans' court opinion, 9/17/07 at 2.[1]

¶ 3 In his brief on appeal, objector/appellee contends that the court's August 3,

---

* Retired Senior Judge assigned to the Superior Court.

1. A written order issued on August 3, 2007. A timely notice of appeal was filed on August

8, 2007. By order entered August 10, 2007, appellant was directed to file a concise statement of matters complained of on appeal within 14 days pursuant to Pa.R.A.P. 1925(b); appellant timely complied on August 15,

2007 order is interlocutory and unappealable. Appellee cites *Estate of Schmitt,* 846 A.2d 127 (Pa.Super.2004), *appeal quashed,* 579 Pa. 703, 857 A.2d 679 (2004), for the proposition that in a decedent's estate, the confirmation of the final account of the personal representative represents the final order. *Id.* at 129, citing *In re Estate of Sorber,* 803 A.2d 767 (Pa.Super.2002); appellee's brief at 15. Appellee states that there has not been a confirmation of the final account and the executor has neither sought nor received a determination of finality from the orphans' court. (Appellee's brief at 16.) Therefore, appellee requests that this court quash the appeal.

¶ 4 *Schmitt* observed that this court has refused to entertain appeals from orders dismissing objections to an account but not expressly confirming the account or approving the proposed distribution. *Id.* at 129, citing *In re Estate of Meininger,* 367 Pa.Super. 105, 532 A.2d 475 (1987). This court in *Schmitt* quashed an appeal from an order striking the appellant's caveat objecting to the probating of the testator's will and admitting the will to probate. In so doing, *Schmitt* acknowledged this court's interest in avoiding piecemeal litigation. *Id.* (citation omitted).

¶ 5 However, since our decision in *Schmitt,* the rules have been amended. "In response to *Schmitt,* our [Supreme Court] amended Rule 311 specifically to permit immediate appeals from orders of the Orphans' Court determining the validity of a will or trust, despite the fact that these orders are often interlocutory." *In re Estate of Fritts,* 906 A.2d 601, 605 (Pa.Super.2006), *appeal denied,* 591 Pa. 673, 916 A.2d 1103 (2007), citing Pa.R.A.P. 311(a)(8), *Explanatory Comment–2005.* The Explanatory Comments recognize that "it is not practical to administer an estate or trust while there is a pending challenge 2007, and the orphans' court filed a Rule

to the validity of the instrument." Similarly, here, it is impractical for appellant/executor to administer the estate while he has challenged the orphans' court's determination that objector/appellee is due one-half the residuary estate.

■ ¶ 6 Furthermore, we agree with the orphans' court that the order of August 3, 2007 constitutes a final order in that it disposes of all claims and all parties. (Orphans' court opinion, 9/17/07 at 2; Pa. R.A.P. 341(b).) The court found that appellee was entitled to a one-half interest in the distributable estate and directed that appellant/executor make distribution accordingly by August 20, 2007. The court also disposed of appellant's claims for compensation/expenses. Therefore, as appellant states, there is nothing left to decide. (Appellant's reply brief at 3.) There is no danger of piecemeal litigation as in *Schmitt.*

■ ¶ 7 The first issue raised for this court's review is whether the orphans' court erred in applying the anti-lapse statute to decedent's Will where one of the named beneficiaries, William D. Harper, predeceased the decedent. Appellant argues that the testator's use of the words "share and share alike" constituted evidence of his intent sufficient to defeat application of the statute. Appellant contends that William D. Harper's share lapsed and that the entire estate should pass to himself as the sole remaining residuary legatee. We disagree, and determine that as the anti-lapse statute operated to prevent the devise to William D. Harper from lapsing, the court below did not err in ordering distribution of one-half of the estate to William D. Harper's son, William N. Harper.

1925(a) opinion.

Our standard of review of the findings of an orphans' court is deferential.

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the factfinder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*In re Estate of Geniviva*, 450 Pa.Super. 54, 675 A.2d 306, 310 (1996). However, 'we are not constrained to give the same deference to any resulting legal conclusions.' *Id.* 'Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.'

*In re Smith*, 890 A.2d 1082, 1086 (Pa.Super.2006) (quoting *In re Estate of Harrison*, 745 A.2d 676, 678–79 (Pa.Super.2000)).

*In re Padezanin*, 937 A.2d 475, 479 (Pa.Super.2007).

¶ 8 Pennsylvania's anti-lapse statute, 20 Pa.C.S.A. § 2514(9), provides as follows:

**§ 2514. Rules of interpretation**

In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

. . . .

(9) **Lapsed and void devises and legacies; substitution of issue.**—A devise or bequest to a child or other issue of the testator or to his brother or sister or to a child of his brother or sister whether designated by name or as one of a class shall not lapse if the beneficiary shall fail to survive the testator and shall leave issue surviving the testator but shall pass to such surviving issue who shall take per stirpes the share which their deceased ancestor would have taken had he survived the testator: Provided, That such a devise or bequest to a brother or sister or to the child of a brother or sister shall lapse to the extent to which it will pass to the testator's spouse or issue as a part of the residuary estate or under the intestate laws.

¶ 9 "A legacy *lapses* when the legatee dies in the lifetime of testator." *In re McFerren's Estate*, 365 Pa. 490, 493, 76 A.2d 759, 762 (1950) (citations omitted). However, under the anti-lapse statute, a devise or legacy in favor of a child or lineal descendant of the testator does *not* lapse where such devisee or legatee leaves issue surviving. *Id.*

¶ 10 Samuel W. Harper's Last Will and Testament provides, in relevant part:

SECOND: I give, devise and bequeath all the rest, residue and remainder of my estate to my wife, FLORENCE J. HARPER.

THIRD: In the event my wife, FLORENCE J. HARPER, fails to survive me, then I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever kind and nature and wheresoever the same may be situate, of which I shall die seized and possessed, or to which at the time of my death I may be entitled, to my son, SAMUEL CARL HARPER and to my son, WILLIAM D. HARPER, share and share alike.

FOURTH: I name, constitute and appoint my wife, FLORENCE J. HARPER as Executrix of this, my Last Will and Testament. In the event my wife, FLORENCE J. HARPER is unable or unwilling to serve, then I name, consti-

tute and appoint my son, SAMUEL CARL HARPER and my son, WILLIAM D. HARPER as Co–Executors of this, my Last Will and Testament. I further direct that my Executrix or Co–Executors heretofore named, be permitted to serve without the necessity of posting bond.

¶ 11 As stated above, Samuel W. Harper died on July 27, 2005. His wife, Florence J. Harper and son, William D. Harper, predeceased the testator on August 22, 2000 and September 9, 2000, respectively. William D. Harper left a son, William N. Harper, objector/appellee in the case *sub judice.*

No rule is more settled in regard to wills than the general rule that the testator's intent, if not unlawful, must prevail. The common law has consistently proclaimed that the testator's intent is the crux in interpreting every will and that intent must be ascertained from the language chosen by the testator. Courts will not search for the testator's intent beyond 'the four corners of his will' when the language of that document is sufficiently clear and unambiguous so as to lead the court to believe it can with reasonable certainty effect a distribution in accordance with the testator's desires.

*In re Estate of Jacobson,* 460 Pa. 118, 122–123, 331 A.2d 447, 449 (1975) (citations omitted).

¶ 12 "The presumption is that a testator intends to dispose of his entire estate and not die intestate as to any part of it. The duty of the court is to so construe a will that no intestacy, partial or entire, will occur." *In re Duffy's Estate,* 313 Pa. 101, 106, 169 A. 142, 144 (1933) (citations omitted). The purpose of Pennsylvania's anti-lapse statute is to reduce the incidence of lapses, which are generally disfavored in the law. *In re Estate of Bickert,* 447 Pa. 469, 471, 290 A.2d 925, 926

(1972); *In re Estate of Burger,* 587 Pa. 164, 179, 898 A.2d 547, 556 (2006) ("Anti-lapse and void legacy statutes represent a legislative effort to advance the policy against intestacy that evolved in the common law.") (citation omitted). Thus, to preclude operation of the statute, a testator's contrary intent must appear with reasonable certainty. *Estate of Kehler,* 488 Pa. 165, 411 A.2d 748 (1980). *See also Estate of Sellers,* 344 Pa.Super. 538, 496 A.2d 1237, 1239 (1985) ("[t]he general rule . . . appears to be that the intention of the testator to render the statute inoperative must be plainly indicated."), quoting *Estate of Corbett,* 430 Pa. 54, 61, 241 A.2d 524, 527 (1968).

¶ 13 Appellant relies on the language in the testator's Will to the effect that if his wife should predecease him, his two sons shall take equal shares of the residue of the estate "share and share alike." Appellant argues that the phrase "share and share alike" denotes a per capita, or individual, distribution, and necessarily negates any right of representation.

¶ 14 This is standard language. As the orphans' court observed, "these are words that have been used in wills for hundreds of years." (Notes of testimony, 5/29/07 at 10.) We fail to see how such language manifests a contrary intent. In fact, there is nothing in the language of the Will which indicates at all, let alone with reasonable certainty, that the testator intended to override the anti-lapse statute. While the testator provided for the possibility that his wife might predecease him, he did not use any survivorship language in the residuary clause such as "provided this person is living at my death" or "if this person does not survive me" with regard to the two sons. In addition, the testator had almost five years after the death of his son to revise the Will if he did not want his son's share to pass through.

¶ 15 While the appellate courts in Pennsylvania have not had an opportunity to address this precise issue, the Missouri Court of Appeals has, and we find its reasoning to be persuasive. In *Estate of Kuruzovich*, 78 S.W.3d 226 (Mo.App. S.D. 2002), the residuary clause of the testator's will provided: "To George Kuruzovich, Anna Owen and Merle Stanley, I give, devise and bequeath all the rest, residue and remainder of my estate; share and share alike, absolutely and in fee simple." Both the testator's brother, George Kuruzovich, and Anna Owen predeceased the testator. *Id.* at 227. George was survived by a son, George J. Karr. *Id.*

¶ 16 The trial court ordered distribution of the entire residuary estate to Merle Stanley, and Karr appealed. The trial court had ruled that the anti-lapse statute was inapplicable, reasoning, as does appellant in the instant case, that the testator's use of the words "share and share alike" in the residuary clause "expressed a clear intent to make a per capita distribution as opposed to a per stirpes distribution." *Id.*[2]

¶ 17 The Missouri Court of Appeals disagreed, stating:

Here, Testator never used the terms 'per capita' or 'per stirpes' in his will; he simply directed that named beneficiaries were to 'share and share alike.' While it is true that terms of equality, such as 'share and share alike,' whether referring to specifically named individuals or to a class of individuals, have been interpreted to cause an equal division of the property [on a] per capita and not per stirpes basis, it is equally true that terms such as these have application in determining the mode of *distribution* among a class and *not in establishing the members* of that class.

*Id.* at 228 (internal quotation marks and citations omitted) (emphasis in original). "Accordingly, Testator's use of the term 'share and share alike,' standing alone, *only* evidences an intent on *how* the property shall ultimately be divided, not *who* will ultimately take." *Id.* (emphasis in original).

¶ 18 Similarly, here, the testator did not use the terms "per capita" or "per stirpes" in his Will, nor did he use survivorship language such as would leave little doubt about his intent to override the anti-lapse statute. *Id.*

Its absence emphatically bespeaks Testator's lack of intent to override the anti-lapse statute as to that bequest, especially since he used survivorship language elsewhere, i.e., in the third clause of his will in a bequest to his wife. The will clearly demonstrates Testator knew how to override the statute had he intended to do so.

*Id.* at 228–229 (citation omitted).

¶ 19 As in *Kuruzovich, supra,* Samuel W. Harper used survivorship language in paragraph third of his Will with regard to his wife; *i.e.,* "In the event my wife, FLORENCE J. HARPER, fails to survive me," but not his sons Samuel C. and William D. Harper. Had the testator included language such as "and to my son, William D. Harper, share and share alike, *provided he is living at my death,*" there would be no question but that the testator intended to overcome the anti-lapse statute.

¶ 20 We find appellant's reading of Section 2514 and concomitant interpretation of

2. "Ordinarily, the words 'per stirpes' are used with respect to substitutional gifts to substituted legatees in the event of the death of a primary legatee or legatees...." *Estate of* *Grimm,* 442 Pa. 127, 143, 275 A.2d 349, 357 (1971) (citations omitted). The expression "per stirpes" may also be used to refer to a taking by right of representation. *Id.*

the words "share and share alike" to be unreasonable. We also note that were we to accept appellant's argument that the language "share and share alike," which has been used in testamentary instruments for centuries, is sufficient, standing alone, to overcome the statutory presumption against lapsed bequests, the anti-lapse statute would be effectively eviscerated. The exception would surely swallow the rule. *Compare Sellers, supra* at 1240 (trial court's holding that the anti-lapse provision did not apply because the time for ascertaining a class is "when the devise or bequest is to take effect in enjoyment," and since the bequest was to take effect in enjoyment at time of testatrix's death, the predeceased siblings were *not* members of the class, would lead to the "absurd result" that "the anti-lapse provision would never apply to the benefit of the beneficiary's issue because the predeceased beneficiary would be simply excluded from the class by operation of law").

■■■■ ¶ 21 Furthermore, we decline appellant's invitation to find an ambiguity in the Will which would permit the consideration of extrinsic evidence. Appellant argues that the orphans' court should have heard testimony that the testator had a difficult relationship with his grandson, William N. Harper, objector/appellee. There is nothing ambiguous about the language in the testator's Will; and therefore, the court was right to refuse to hear parol evidence of the testator's intent. "An ambiguity in a will must be found without reliance on extrinsic evidence; extrinsic evidence is admissible only to resolve, not create, an ambiguity." *In re Macfarlane's Estate*, 313 Pa.Super. 397, 459 A.2d 1289, 1291 (1983), citing *In re Estate of Kelly*, 473 Pa. 48, 373 A.2d 744 (1977). *See also Sellers, supra* at 1239 (court erred in considering extrinsic evidence of whether a contrary intent existed, where Section

2514 clearly requires that contrary intent must appear in the provisions of the will itself); *Jacobson, supra* at 123, 331 A.2d at 449 ("Extrinsic evidence of surrounding facts cannot be received as evidence of testator's intention independent of the written words employed.") (citations and footnote omitted).

¶ 22 The orphans' court did not err in applying the anti-lapse statute to the testator's Will. Therefore, objector/appellee William N. Harper is entitled to a one-half share of the residuary estate.

■■■■ ¶ 23 Turning to appellant's second issue on appeal, he contends that the orphans' court erred in reducing the executor's compensation and denying payment for services rendered to the decedent and his estate. We assign no error and affirm the amount of compensation awarded.

Pursuant to 20 Pa.C.S. § 3537, the orphans' court must 'allow such compensation to the personal representative as shall in the circumstances be reasonable and just, and may calculate such compensation on a graduated percentage.' However, '[t]he basis for determining whether compensation is reasonable [under section 3537] depends upon the value of the services actually rendered.' *In re Estate of Geniviva*, 450 Pa.Super. 54, 675 A.2d 306, 312–13 (1996) (citing *In re Estate of Rees*, 425 Pa.Super. 490, 625 A.2d 1203 (1993)). In addition, personal representatives seeking compensation from estate assets bear 'the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation claimed.' *Id.* at 313 (quoting *Estate of Rees, supra* at 1206). Finally, 'the determination of whether the executor's fees are reasonable is left to the sound discretion of the Orphans' Court, and we will not disturb its determination absent a clear error or an abuse of discretion.' *Id.*

*Padezanin, supra* at 485. "The amount of compensation so awarded is a matter peculiarly within the discretion of the Orphans' Court." *Estate of Allen,* 488 Pa. 415, 430, 412 A.2d 833, 840 (1980) (citation omitted).

¶ 24 Executor/appellant requested payment of personal representative commissions in the amount of $30,000, which the court reduced to $16,324.85 following a hearing on the matter. It was apparent from appellant's testimony that much of the requested amount related to the selling of the decedent's house while the decedent was still alive. Appellant testified he and his son cleaned out the house and delivered items to charitable organizations. (Notes of testimony, 5/29/07 at 65–66.) This was prior to the decedent's death and was properly discounted by the court.

 ¶ 25 The orphans' court determined that appellant's performance as executor did not merit any deviation from the norm in terms of what is a reasonable commission. (Orphans' court opinion, 9/17/07 at 5.) *See, e.g., In re Reed Estate,* 462 Pa. 336, 340–341, 341 A.2d 108, 110–111 (1975) (while the "rule of thumb" is that 3% of the appraised value of the corpus at time of transfer to the fiduciary for administration is a *prima facie* fair and reasonable executor's fee, this amount may be increased or decreased according to what the services were actually worth, *e.g.,* where the fiduciary performed extraordinary duties or where the performance falls below accepted norms) (citations omitted). This estate was not particularly complicated; it contained no real property and decedent's investments were not managed or churned during administration. (Orphans' court opinion, 9/17/07 at 5; notes of testimony, 5/29/07 at 96.) We find no abuse of discretion in reducing appellant's requested commission to $16,324.85, which represents approximately 3% of the estate (the inventory value of the estate

was approximately $544,000) (*id.* at 58). *In re Reed Estate, supra* (lower court was presented with no evidence compelling departure from the *prima facie* rule).

 ¶ 26 Turning to the $11,000 for services allegedly rendered to the estate by appellant's son, this amount was properly denied. Appellant testified that his son, Samuel W. Harper, cut the grass, trimmed the hedges, swept the porch and sidewalks, and did some accounting work. (Notes of testimony, 5/29/07 at 65.) Samuel W. Harper also helped move things out of the house. (*Id.* at 66–67.) Again, these were all claims for personal services predating the death of the decedent, and while appellant was representing the decedent pursuant to a durable power of attorney. (Orphans' court opinion, 9/17/07 at 5.) They are clearly not payable out of the estate.

> We have consistently held that claims against a decedent's estate are viewed with suspicion when they could and ordinarily would, if genuine, and reasonable time permitted, have been made in decedent's lifetime; and that all claims against a decedent's estate must be proved by evidence which is clear, direct, precise and convincing. We have also held that the existence of a family relationship is an indication that services such as those rendered in the case at bar [ (domestic services) ] were not rendered for compensation. Likewise, no recovery can be had against the estate of a decedent for services rendered in expectation of a legacy.

*In re Gadola's Estate,* 410 Pa. 250, 252, 188 A.2d 744, 746 (1963) (citations omitted).

 ¶ 27 Furthermore, the claims for services rendered by Samuel W. Harper, who did not testify, are unsupported by the record. Appellant presented an invoice from "SWH Services" in the amount

of $11,000 and listing an address of 2460 Robbins Station Rd., North Huntingdon, PA, which is the home of the executor/appellant. (Orphans' court opinion, 9/17/07 at 5.) The listed amounts were in whole numbers (*e.g.,* $3,000 for "moving expenses" and $2,500 for "financial preparation"), and appellant did not present any receipts, itemized invoices, or contemporaneous timesheets to support these claims. (Notes of testimony, 5/29/07 at 74–75.) Appellant admitted that these figures are estimates, compiled immediately prior to trial from memory. (*Id.*) Clearly, the court did not abuse its discretion in denying the claim for $11,000 for personal services allegedly rendered by decedent's grandson during decedent's lifetime.

¶ 28 Order affirmed.

¶ 29 COLVILLE, J. files a Dissenting Opinion.

### DISSENTING OPINION BY COLVILLE, J.:

¶ 1 For the reasons that follow, I would quash this appeal.

¶ 2 Appellant appeals the order of August 3, 2007. That order does not involve the validity of a will. Therefore, the appealability of such interlocutory orders under Pa.R.A.P. 311 is irrelevant.

¶ 3 In an estate, the order confirming the account is the final, appealable order. *Matter of Estate of Meininger,* 367 Pa.Super. 105, 532 A.2d 475, 477 (1987). The order in this case directed the filing of an amended account. When the Executor files that account and the court issues an order confirming it, that order will be the final, appealable order. *Id.*

¶ 4 I note also that the Orphans' Court did not certify the order as final under Pa.R.A.P. 342. Additionally, the order in question does not qualify as a collateral order subject to immediate appeal. *See In*

*re Estate of Petro,* 694 A.2d 627, 630 (Pa.Super.1997); Pa.R.A.P. 313.

¶ 5 In short, I would find the order not appealable and, as such, would quash this appeal. Accordingly, I dissent.