J-S10036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ESTATE OF LEONARD J. SMOLSKY, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  RAYMOND JOSEPH SMOLSKY | No. 2182 EDA 2015 |

Appeal from the Decree July 1, 2015
in the Court of Common Pleas of Bucks County
Orphans' Court at No.: No. 2013-0650

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED FEBRUARY 04, 2016**

Appellant, Raymond Joseph Smolsky, appeals *pro se* from the decree denying his motion for court approval to lease/purchase the realty of Decedent, Leonard J. Smolsky.  We affirm.

We take the following facts from the orphans' court's July 1, 2015 opinion and our independent review of the record.  Decedent died on September 8, 2013.  His January 17, 1999[1] last will and testament was

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The date of February 17, 1999 appears on the page of the will signed by Decedent, although the page that the notary public signed contains the date of January 17, 1999.  (*See* Exhibit P-1, Decedent's Last Will and Testament,
*(Footnote Continued Next Page)*

probated by the Register of Wills on December 4, 2013. Thereafter, the court appointed Samuel C. Totaro, Jr., Esquire, as administrator of Decedent's estate.

Appellant is Decedent's son and one of the five residual heirs under the probated will. He currently is imprisoned at SCI-Mahanoy. On January 2, 2015, he filed the subject motion for court approval to lease/purchase the Decedent's realty in Forestville, Pennsylvania. The court held a hearing on May 8, 2015, at which Appellant appeared *pro se* via video conference. He introduced a copy of a June 1, 2012 letter from Decedent to the Pennsylvania Parole Board, as well as the testimony of Decedent's longtime neighbors, Anthony and Doris Locklear; and of his granddaughter, Katie Smolsky. Appellant maintained that the letter indicates Decedent's intent to devise his Forestville, Pennsylvania property to him, and that the testimony provided further support of such intent.[2] Mr. Totaro testified in his position as administrator of the estate that the subject property was under an agreement of sale at the time of the hearing, and that he acted in the best interest of all of the heirs when he agreed to sell the property to the third

_(Footnote Continued)_ ───────────

1/17/99, at 11, 13). For the sake of consistency, we will identify the will as being dated January 17, 1999.

[2] Appellant argued at the hearing that the letter was a codicil to the will. He does not advance that argument in this appeal.

party. On July 1, 2015, the court denied Appellant's motion. Appellant timely appealed.[3]

Appellant raises one issue for this Court's review:

I. Did the [orphans'] court err as a matter of statutory and case law, abuse its discretion, show bias[,] or deal unfairly with Appellant son of the Deceased by concluding the Administrator had no obligation to lease/purchase realty of the deceased to Appellant son when Appellant son invoked his 18.25% in kind interest and was willing to pay $10,000.00 more and the court allowed sale to a stranger?

(Appellant's Brief, at 3) (most capitalization omitted). Appellant's issue lacks merit.[4]

Our standard of review of an orphans' court's decree is well-settled:

_____

[3] Appellant filed a timely concise statement of errors complained of on appeal on July 23, 2015. *See* Pa.R.A.P. 1925(b). The court filed a Rule 1925(a) opinion on July 30, 2015. *See* Pa.R.A.P. 1925(a).

On August 17, 2015, Appellee filed a motion to quash this appeal, which we denied *per curiam* on September 30, 2015, without prejudice to his raising the issue with this panel. Appellee has not done so. (**See** Appellee's Brief, at 6-10).

[4] The orphans' court maintains that Appellant's Rule 1925(b) statement was overly vague and that we should deem his appeal waived because "[a]n analysis of Appellant's Concise Statement provides little guidance to this [c]ourt as to what issues he is pursuing on appeal." (Orphans' Court Opinion, 7/30/15, at 2). We agree with the court that Appellant's first two issues are overly vague. (**See** Appellant's Rule 1925(b) Statement, 7/23/15, at 1); **see also In re A.B.**, 63 A.3d 345, 350 (Pa. Super. 2013) (observing that "the Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal. Further, this Court may find waiver where a concise statement is too vague.") (citations and internal quotation marks omitted). However, Appellant's third claim of error does identify the issue raised on appeal. Therefore, we decline to find waiver.

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support.
>
> The rule is particularly applicable to the findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. However, we are not limited when we review the legal conclusions that [an] Orphans' Court has derived from those facts.

*In re Wilton*, 921 A.2d 509, 512-13 (Pa. Super. 2007) (citation omitted).

In this case, Appellant argues that he sought to utilize his legal interest in the estate toward the purchase the Forestville property, and that the court erred in refusing to set aside the agreement of sale entered into by Mr. Totaro with a third party, because it was Decedent's intent that Appellant receive the real estate. (*See* Appellant's Brief, at 7).[5] This issue does not merit relief.

---

[5] We observe that, although Appellant cites precedential boilerplate law about the construction of wills and the duties of administrators, (*see* Appellant's Brief, at 15, 17), he relies in large part on non-binding caselaw from the Court of Common Pleas in support of his argument. (*See* Appellant's Brief, at 7-11, 17, 19); *see also Ambrogi v. Reber*, 932 A.2d 969, 977 n.3 (Pa. Super. 2007), *appeal denied*, 952 A.2d 673 (Pa. 2008) (noting that decisions from court of common pleas have no binding effect on Superior Court). Additionally, although he acknowledges that there is a "well-settled distinction between real and personal property," (Appellant's

*(Footnote Continued Next Page)*

- 4 -

We are guided by the following legal authority in this matter. Pursuant to section 3360(a) of the Decedents, Estates, and Fiduciaries Act (the Act):

> When a personal representative shall make a contract . . . the receipt of an offer to deal on other terms shall [not] . . . relieve the personal representative of the obligation to perform his contract or shall constitute ground for any court to set aside the contract, or to refuse to enforce it by specific performance or otherwise: Provided, That this subsection shall not affect or change the inherent right of the court to set aside a contract for fraud, accident or mistake.

20 Pa.C.S.A. § 3360(a). In considering the effect of section 3360(a) on the sales of estate realty, the Pennsylvania Supreme Court observed:

> When called upon to interpret statutory provisions our touchstone is the Statutory Construction Act of 1972.[6] In pertinent part the Act provides:
>
> > (a) the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.
> >
> > (b) When the words of a statute are clear and free from all ambiguity the letter of it is not to be disregarded under the pretext of pursuing its spirit.
>
> 1 Pa.C.S.[A.] § 1921.

_(Footnote Continued)_ ————————————

Brief, at 9) (citation omitted), he fails to cite any pertinent caselaw about distribution of real property. (**See id.** at 10, 14 (citing **Minichello's Estate**, 84 A.2d 511, 513 (Pa. 1951), which addressed stock of closely held corporation); **see also** Pa.R.A.P. 2119(a)-(b). However, because this does not hamper our meaningful appellate review, we will not deem his issue waived.

[6] Act of December 6, 1972, P.L. 1339, No. 290, § 3.

Examining section 3360(a) in this light we note at the outset that the section clearly and unambiguously states that **absent fraud, accident, or mistake a court may not set aside an agreement to sell estate property**. Furthermore, the section goes on to state that a court may not refuse to enforce such sales agreements despite inadequacy of consideration. The intent of the legislature in enacting this statute was to prevent courts from being put in the position of being super executors/administrators, and to leave essentially private transactions in the hands of the individuals involved.

*In re Estate of Hughes*, 538 A.2d 470, 472 (Pa. 1988) (case citations omitted; emphasis added).

Here, in denying Appellant's motion, the orphans' court observed:

. . . [A]s administrator of [D]ecedent's estate, Mr. Totaro's obligation is to the estate and the heirs as a whole, rather than to a specific beneficiary. Mr. Totaro testified that his "obligation [is] to the other five heirs to make certain that the debts are paid and that taxes are paid and that whatever is left over is distributed to them equally." (N.T. Hearing, 5/08/15, at 121). Further, he testified that the property is currently under an agreement of sale. (*See id.* at [105-06,] 124). We believe that it is within Mr. Totaro's purview and discretion to analyze offers made for property within the estate, determine which offers are viable, and which would benefit the beneficiaries to the greatest extent. [Appellant] testified that he had submitted certain offers to purchase the property, but that they were rejected. We hold that Mr. Totaro was under no obligation specifically to sell the property to [Appellant], and therefore decline to require him to do so now.

(Orphans' Ct. Op., 7/01/15, at 3) (some citation formatting provided). We agree with the reasoning of the orphans' court.

Mr. Totaro testified that he entered into an agreement of sale with a third party for $100,000.00. (*See* N.T. Hearing, 5/08/15, at 105-06). Appellant did not offer any evidence of fraud, accident or mistake, (*see id.*

- 6 -

at 54-127); nor does he argue the existence of these grounds for setting aside the agreement to sell the property. (**See** Appellant's Brief, at 8-19). Therefore, we conclude that the orphans' court did not err or abuse its discretion when it denied Appellant's request that it set aside the sale to allow him to purchase the property. **See In re Wilton**, **supra** at 512-13.

Moreover, Appellant's argument that Decedent intended to devise the Forestville property to him is not supported by the record. (**See** Appellant's Brief, at 11, 13-14).

> No rule is more settled in regard to wills than the general rule that the testator's intent, if not unlawful, must prevail. The common law has consistently proclaimed that the testator's intent is the crux in interpreting every will and that intent must be ascertained from the language chosen by the testator. Courts will not search for the testator's intent beyond 'the four corners of his will' when the language of that document is sufficiently clear and unambiguous so as to lead the court to believe it can with reasonable certainty effect a distribution in accordance with the testator's desires.

**In re Estate of Harper**, 975 A.2d 1155, 1160 (Pa. Super. 2009) (citation omitted).

Here, Appellant's only reference to the language of Decedent's will is found on page eleven of his brief where he summarizes a portion of paragraph twelve of the will, the business powers of the administrator. (**See** Appellant's Brief, at 11); (**see also** N.T. Hearing, 5/08/15, at 60-61); (Exhibit P-1, Decedent's Last Will and Testament, 1/17/99, at 8-9 ¶ 12(I)). However, contrary to Appellant's assertion that this subsection requires Mr.

Totaro to sell the Forestville property to him because this is what Decedent intended, section 12(I) actually states:

> My [estate administrator] . . . shall have the broadest authority in dealing with any business interest of mine that may be received by [him] as part of my estate or trust, including the following powers: . . . In general, to deal with any business interest . . . with the same freedom of action that I would have if living.

(Exhibit P-1, at 8-9 ¶ 12(I)).

Appellant fails to argue that this language is ambiguous, and his attempt to interpret section 12(I) as requiring Mr. Totaro to sell him the Forestville property because he wanted to use his interest toward it is unavailing. (*See* Appellant's Brief, at 11; *see also* N.T. Hearing, 5/08/15, at 61).

Further, our independent review of the will reveals that it does not expressly mention the Forestville property at all. (*See* Exhibit P-1, at 1-13). Appellant's name is mentioned only as one of the intended heirs of Decedent's residual estate. (*See id.* at 4-5 ¶ 8). In addition to the language of section 12(I), the will grants Mr. Totaro, as administrator, the power, *inter alia*, to "sell, to grant options for the sale of, or otherwise convert any real . . . property . . . at public or private sale, for such prices, at such time, in such manner and upon such terms as [he] may think proper[.]" (*Id.* at 6 ¶ 11(C); *see id.* at 8-9 ¶ 12(I)). We conclude that nothing in this language is ambiguous. Therefore, on the basis of the will's unambiguous language, the orphans' court properly denied Appellant's

motion to allow him to purchase the already contracted property. *See In re Estate of Harper*, *supra* at 1160.

In fact, even assuming that the will's language were ambiguous and required the orphans' court to look beyond its four corners to discern Decedent's intent, *see id.*, the court properly found that Appellant failed to prove that Decedent intended to devise the Forestville property to him.

> If a testator intends to make a testamentary gift, it can be done in many ways and in many forms, and the intent, as we have often said, is the polestar. Papers . . . have been sustained as wills where a testamentary disposition of property was clearly contained in a letter . . . .

*In re Estate of Shelly*, 950 A.2d 1021, 1026 (Pa. Super. 2008), *appeal denied*, 962 A.2d 1198 (Pa. 2008) (citation omitted).

In this case, Appellant introduced a letter Decedent wrote to the Pennsylvania Parole Board as evidence of his alleged testamentary intent that Appellant recieve the Forestville property. (*See* N.T. Hearing, 5/08/15, 61-62; Exhibit P-2, Letter from Decedent to Pennsylvania Parole Board, 6/01/12). Regarding this letter, the orphans' court observed:

> Contrary to [Appellant's] assertion, [D]ecedent's letter is wholly devoid of testamentary intent. Decedent **does** express a desire for [Appellant] to reside at the property in Forestville upon his release from prison, and we believe that it was his intent for [Appellant] to reside at the residence after his release. However, nowhere in the [June 1], 2012, letter does [D]ecedent state an intent to transfer the property to [Appellant]. Decedent states within the letter, "I will be having him manage and run my Sate (sic) Vehicle Inspection Station located in Forestville, Pennsylvania. [The inspection station] also has a house next to it with two furnished apartments and a third floor that [Appellant] will turn into a third apartment." [(Exhibit P-2, at

3).] Later in the letter, [D]ecedent writes, "[at some point, with the Board's approval, Appellant] plans on turning the full length open space above the 4-bay inspection station garage, into another apartment/office to work out of and to live in when the need arises." [(*Id.* at 4).] We believe that the above referenced language is most accurately read as [D]ecedent proposing a housing and employment plan for [Appellant] for presentation to the parole board. This is wholly distinguishable from an intent to **devise** the property to [Appellant].

The language found in the remainder of the letter is consistent with the aforementioned portions. [(*See id.* at 1-6).] There is no mention at any point within the letter of a disposition of property to [Appellant] upon [D]ecedent's death—a crucial element which must be satisfied to find the presence of testamentary intent. [*See In re Estate of Shelly*, *supra* at 1026] Rather, the entirety of the letter is most clearly read as an expression of intent to illustrate to the parole board, on [Appellant's] behalf, that [Appellant] would have a place to live and work upon his release from prison. [(*See, e.g.*, Exhibit P-2, at 1-2 (Decedent writes that he is "beseeching you humbly to parole our son[]" because he is "now fully retired and in much need of [Appellant] at home . . . where he will first live.")).]

(Trial Ct. Op., 7/01/15, at 4) (emphases in original; footnote omitted). We agree with the orphans' court's characterization of the letter as a father's plea to the parole board on his son's behalf, and not a letter evidencing testamentary intent. *See In re Estate of Shelly*, *supra* at 1026. Hence, the orphans' court did not abuse its discretion or commit an error of law when it denied Appellant's motion because he failed to establish that

Decedent intended to bequeath the Forestville property to him.[7] *See In re Wilton*, *supra* at 512-13.

In sum, we conclude that the record supports the orphans' court's denial of Appellant's motion to lease or purchase the Forestville property where the property was already under contract, Mr. Totaro acted within his authority in selling it to a third person, and Appellant failed to establish that

_____

[7] Decedent's long-time neighbors, Anthony and Doris Locklear, testified at the hearing. (*See* N.T. Hearing, 5/08/15, at 87, 96). Although Mrs. Locklear stated that Decedent wanted to "set [Appellant] up," (*id.* at 89), she testified that Decedent never said that he wanted Appellant to receive the property "upon his death." (*Id.* at 94; *see id.* at 95). In fact, Mrs. Lockler testified that Decedent sent money to Appellant in prison and wished that he was home, but that he only talked about Appellant occasionally, and he never said that the subject property was the perfect place for Appellant to live out his life. (*See id.* at 91, 93). Similarly, Mr. Locklear testified that Decedent wanted Appellant to come home from prison and establish himself there before going to work at the Forestville property. (*See id.* at 98). This testimony did not establish Decedent's alleged intent to devise the Forestville property to Appellant upon Decedent's death. *See In re Estate of Shelly*, *supra* at 1026.

Also, we acknowledge that Appellant's niece, Katie Smolsky, testified that Decedent wanted Appellant to come home and have the house in Forestville. (*See id.* at 102). However, not only did this testimony not establish Decedent's testamentary intent to devise the property to Appellant, it was within the province of the orphans' court, as finder of fact, to judge the credibility of the witnesses, and consider the weight to be afforded their testimony. *See In re Wilton*, *supra* at 512. The orphans' court's decision is supported by the evidence of record and cannot be disturbed on appellate review. *See id.*

Decedent had the testamentary intent to devise the real estate to him. ***See***

***id.***[8]

Decree affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/2016

---

[8] To the extent Appellant's argument can be interpreted as claiming that Mr. Totaro breached a fiduciary duty in the way he has administered Decedent's estate, (***see*** Appellant's Brief, at 14, 17, 19), we observe that he did not make this argument to the orphans' court, and we are precluded from addressing this issue now. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").